**LOIS SPORTSWEAR, U.S.A.,
INC., Plaintiff,**

v.

**LEVI STRAUSS &
COMPANY, Defendant.**

**LEVI STRAUSS &
COMPANY, Plaintiff,**

v.

**TEXTILES CONFECCIONES
EUROPAS, S.A., Defendant.**

Nos. 82 Civ. 8326 (RWS), 83 Civ.
4338 (RWS).

United States District Court,
S.D. New York.

Jan. 9, 1985.

Whitman & Ransom, New York City, for Lois Sportswear, U.S.A.

Milgrim, Thomajan, Jacobs & Lee, P.C., New York City, for Levi Strauss & Co.; Steven H. Hartman, New York City, of counsel.

OPINION

SWEET, District Judge.

Lois Sportswear, U.S.A., Inc. ("Lois") has moved to require production of certain documents of Levi Strauss & Company ("Levi") which Levi claims are privileged or work product. Lois has inspected the documents at issue in pretrial discovery and does not challenge the classification of the documents but asserts that the privileges have been waived. For the following reasons the motion will be denied.

The underlying consolidated action alleges, among other claims, trademark infringement and unfair competition arising out of designs used by the parties including the Levi Arcuate mark (the "Levi Mark"). The parties have been contesting certain of these issues not only in this forum but also

before the Court of International Trade and the United States Customs Service. There are twenty-two documents here at issue. All were located in Levi's Legal Department files, all are correspondence between lawyers relating to the issues of trademark infringement or were prepared for use in this or other similar litigation. All were disclosed to Lois as a consequence of the discovery undertaken in this action.

On March 7, 1984, Levi served its answers to the written interrogatories of Lois and identified 117 registrations or applications for the Levi Mark in as many as 109 foreign countries. Rather than answer the interrogatory request for specific details concerning those matters, Levi offered to make available for inspection the files respecting them which it maintained at its offices in San Francisco, as well as the files pertinent to the policing efforts of Levi against third party usage of designs of the kind at issue in this case.

Upon the request of Lois' counsel to conduct the inspection on May 14 when he would be in California on another assignment, counsel for Levi requested that the then pending request be narrowed and suggested the dates of May 10 or 11 for the inspection. Counsel for Lois alternatively proposed June 4 and 5 when he would again be in California on other matters and on May 29 limited the request to documents generated within the preceding four years and on May 30 he additionally limited his request to three classes of documents, two of which, however, were quite extensive in volume. Counsel to Levi confirmed that the documents could be inspected on June 4 and 5, leaving, however, but one day to segregate, review and collate the specified documents.

Counsel for Lois was permitted to review 7–8 boxes of materials responsive to the three specified categories. These contained approximately 16,000 separate pages which had been assembled after review of over 30,000 pages of documents by paralegals supervised by the Deputy General Counsel of Levi.

Following the inspection, counsel for Lois requested production of documents consisting of approximately 3,000 pages, these amounting to approximately 20% of the total produced for his review, including the twenty-two documents as to which the privilege is now asserted. When those documents were transmitted to Levi's litigation counsel for transmission to Lois, it was discovered that certain of them were privileged and they were withheld from Lois in accordance with an explanatory letter of July 12, 1984. This motion was served on October 23, 1984 and argued on November 15.

Documents 1–10 conveyed to Levi advice, opinions, analysis or recommendations of counsel on the legal issues of pending or potential litigation based upon information supplied to them by Levi or contained informational submissions to outside counsel from Sylvia Kaplan, a paralegal in the Legal Department of the Company to enable counsel to form those views (Document 13). Documents 14–17 were communications among personnel in the Legal Department of Levi containing the assessments of outside counsel of the probable outcome of litigation, required or recommended trial proofs, the substantiality of defenses and matters of similar import. Documents 18–19 were communications from nonlegal Levi personnel respecting information requested by outside counsel in order to render advice and plan for trial in this action.

Documents 11, 12 and 22 were from litigation counsel in this action to the Levi staff attorney with principal responsibility for this action.

Documents 20 and 21 are letters from lawyers retained by Levi to the Customs Service concerning Customs' ruling permitting the importation of jeans and containing details respecting two infringements of Levi trademarks.

Document 22 was addressed to the Assistant United States Attorney who, at the time, was the Government attorney responsible for the defense of an action brought by Lois against the United States in the Court for International Trade.

As to Documents 20 and 21, the affidavits indicate that attorney work product

was submitted to a third party, the Customs Service, in order to bar importation of the Lois products into the United States on at least some of the same grounds as are asserted here and therefore appear to be covered by the provisions of Rule 26(b)(3), Fed.R.Civ.P. in that they were prepared in anticipation of possible litigation. All the other documents as described above are either internal work product or covered by the attorney client privilege. Indeed, there no longer appears to be a dispute over the classification of the documents but only as to whether the pertaining privileges were waived under the circumstances described above.

What is at issue here is whether or not the release of the documents was a knowing waiver or simply a mistake, immediately recognized and rectified. The elements which go into that determination include the reasonableness of the precautions to prevent inadvertent disclosure, the time taken to rectify the error, the scope of the discovery and the extent of the disclosure. There is, of course, an overreaching issue of fairness and the protection of an appropriate privilege which, of course, must be judged against the care or negligence with which the privilege is guarded with care and diligence or negligence and indifference. By a narrow margin the balance tips in Levi's favor.

As to the reasonableness of the precautions, Levi only just adequately protected its privilege. The procedures followed are described by the Deputy General Counsel as follows:

> I instructed two paralegals in the Legal Department * * * to extract from the file cabinets all documents falling within the categories Mr. Schutzman desired to review. I then went through a sampling of those files with them and, noting that there were some privileged documents in the materials, I instructed * * * to segregate documents of that kind from those which would be produced for Mr. Schutzman's inspection.

Levi apparently had no practice of designation of confidential documents at the time of origination. There is no statement as to any general instructions given to the reviewers other than to segregate documents "of that kind." There is no evidence that any privileged documents were among the 14,000 pages removed as not being within the requested categories. There is indeed no affidavit from the reviewers that in fact a requested search for privileged documents was in fact made.

However, only 22 documents out of some 16,000 pages inspected and out of the 3,000 pages requested to be produced are now claimed to be privileged. Under these particular facts, the evidence is barely preponderate that the disclosure of the privileged documents was inadvertent and a mistake, rather than a knowing waiver.

This conclusion accords with similar conclusions reached in this District and elsewhere. *Dunn Chemical Co. v. Sybron Corp.*, 1975–2 Trade Case. ¶ 60, 561, at p. 67, 463 (S.D.N.Y.1975) (Lasker, J.) (inadvertent production of otherwise privileged communication results in no waiver); *see also, Connecticut Mutual Life Ins. Co. v. Shields*, 18 F.R.D. 448 (S.D.N.Y.1955); *Mendenhall v. Barber-Greene Co.*, 531 F.Supp. 951 (N.D.Ill.1982); *Control Data Corp. v. IBM*, 16 Fed.R.Serv.2d 1233 (D.Minn.1972). Clearly the harshness of the result sought by Lois is a factor. *See Data Systems of New Jersey, Inc. v. Philips Business Systems, Inc.*, No. 78–6015 (S.D.N.Y. January 8, 1981) (Haight, J.) (LEXIS, Genfed Library, Dist. file) (inadvertent production of privileged materials in nine transfiles screened by two paralegals). *Underwater Storage, Inc. v. U.S. Rubber Co.*, 314 F.Supp. 546 (D.D.C.1970), relied upon by Lois, adopted Wigmore's "strict responsibility" standard for disclosures and rejected the "intent" standard. However, the "intent" standard is reflected in Rule 503(a)(4) of the Proposed Rules of Federal Evidence, which provides that:

> A communication is "confidential" if not *intended* to be disclosed to third persons other than to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication. (emphasis added).

The Proposed Rules, which reject Wigmore's "strict responsibility" doctrine in favor of an "intent" test, were approved by the Supreme Court and are accepted as a restatement of the law applied in the federal courts. *U.S. v. Mackey,* 405 F.Supp. 854, 857–58 (E.D.N.Y.1975) (Weinstein, J.). Although Proposed Rule 503(a)(4) is a definition of what the attorney-client privilege encompasses and does not directly deal with waiver of that privilege, its emphasis on intent in the creation of privileged communications would appear to make that factor equally crucial to destruction of the privilege through forfeiture.

The authority dispute, that is, whether the Deputy General Counsel had the authority to waive the privilege, need not be resolved in view of the conclusion reached that the disclosure was inadvertent. However, since she was the individual designated to exercise the privilege, a logical corollary would be that she also was thereby authorized to waive such exercise.

The privilege asserted will be upheld, and Levi may withhold the 22 documents.

IT IS SO ORDERED.