KEENE CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

EAGLE–PICHER INDUSTRIES, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

GAF CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

JOHNS–MANVILLE CORPORATION et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

UNR INDUSTRIES, INC., et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

FIBREBOARD CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

H.J. PORTER COMPANY, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

Nos. 579–79C, 585–81C, 170–83C, 287–83C, 465–83C, 688–83C, 1–84C, 16–84C, 514–84C and 515–85C.

United States Claims Court.

April 13, 1987.

Robert M. Chilvers, San Francisco, Cal., for plaintiff in No. 514–84C. Ann T. Olson, Brobeck, Phleger, & Harrison, of counsel.

Robert M. Bruskin, Washington, D.C., for plaintiffs in 465–83C. Harvey G. Sherzer and Michael A. Hordell, Howrey & Simon, of counsel.

H. Michael Semler, Washington, D.C., with whom was Asst. Atty. Gen., Richard K. Willard, for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiff Fibreboard Corporation ("Fibreboard") moved to compel production of documents by the attorney of record for plaintiffs in *Johns-Manville Corporation et al.,* No. 465–83C, one of three cases filed by Johns-Manville Corporation and Johns-Manville Sales Corporation (collectively referred to as "Johns-Manville"). The matter has been briefed, and the parties were heard at a pre-motions conference. Fibreboard's motion raises the novel question of whether a similarly situated co-party can obtain through court order copies of documents listed as potential trial exhibits from another party who has released them voluntarily to its opponent.

## FACTS

The so-called asbestos litigation, consisting of ten cases, some of which are consolidated, has advanced to the point that Johns-Manville's case No. 465–83C is scheduled for trial. Johns-Manville and the Government negotiated before the previous judge a series of scheduling orders that provided for the pretrial identification of exhibits. Johns-Manville duly filed on November 3, 1986, pursuant to a scheduling order entered by Judge Lydon on April 11, 1986, its list of exhibits. As agreed to with defense counsel, Johns-Manville on November 10, 1986, provided the Government with copies of the 1,565 documents listed in its exhibit list. The reciprocal advantage to Johns-Manville was, of course, that the Government turned over copies of the documents it had listed on its exhibit list filed on March 10, 1987. In the interval Fibreboard moved to compel Johns-Manville to provide for copying and inspection a set of the documents submitted to the Government.

## DISCUSSION

This court recently discussed the workproduct doctrine in the context of the asbestos cases in *Eagle-Picher Industries, Inc. v. United States,* 11 Cl.Ct. 452, 457–61 (1987) (order denying motion to compel). As explained in that order, the work product doctrine has evolved into a qualified privilege. Assuming that the privilege is not waived by a disclosure that is inconsistent with the adversary system, ordinary or fact work product (not opinions) can be disclosed if the movant makes the showing required by RUSCC 26(b)(2) that a substantial need exists for the materials in preparation of its case and that the substantial equivalent cannot be obtained elsewhere without undue hardship.

There is no dispute between the parties that the exhibit list itself constitutes attorney work product. *Sporck v. Peil,* 759 F.2d 312, 315 (3d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230

(1985). Fibreboard argues that because Johns-Manville voluntarily released to the Government the documents identified in its list of exhibits, it has made a disclosure inconsistent with the adversary system. Johns-Manville characterizes the release of documents as "pursuant to or as an adjunct to a court order" and continues:

> Moreover, Manville would like to clarify that it did not voluntarily, in the true sense of the word, provide the United States with the documents in question. Although, in retrospect, the operative language of the court's order could have been clearer, there never was any question but that the exhibits would be physically provided by each party to the other....

Johns-Manville's Br. filed Mar. 27, 1987, at 5. The language in the order entered by Judge Lydon may have been clearer, but the parties are responsible for having drafted this agreed-upon order that was presented to the court for signature. Appendix G of the rules of this court, which was in effect when the April 1986 order was entered, provides that all exhibits to be used at trial shall be exchanged at least 30 days before the pretrial conference. Appendix G was not used as the basis for their agreed-upon order.

■ Johns-Manville argues that the disclosure was not inconsistent with the adversary system because it occurred pursuant to court order. Johns-Manville misperceives the phrase "disclosure inconsistent with the adversary system," which reaches release of a document to one's adversary. The adversary system is predicated on not making information available to one's opponent absent the expectation that it no longer remains shielded from discovery. "A disclosure made in the pursuit of ... trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver...." *United States v. AT & T,* 642 F.2d 1285, 1299 (D.C.Cir.1950). Disclosure of work product to one's opponent made pursuant to court order waives the protection be-

cause of the nature of the disclosure, not the circumstances whereby it was made.[1]

■ Whether the order implies that the exhibits themselves be exchanged before trial, however, is not dispositive of waiver. There is no question in this case that Johns-Manville did not exact an agreement from the Government or condition release to inhibit the Government in the use of any of the documents it provided, nor did the Government ask for or secure any such limitation on Johns-Manville's use of the documents it provided. Johns-Manville could have moved this court to issue a protective order, but it is unlikely that the court would have acceded to the request, given the importance of these documents in the wide-ranging asbestos litigation pending against the Government throughout the United States and the consequential absence of any rational purpose to be served by inhibiting their use by the Government in other litigation.

■ It is held that filing a list of exhibits pursuant to court order is a disclosure inconsistent with the adversary system, since the adversary receives the list and the list is on the public record. Work product immunity has been waived with respect to the list. It is also held that release of the underlying documents to one's adversary (without a protective order conditioning use by the adversary) removes any protection (other than that afforded by a protective order to restrict use of confidential commercial or other types of protected information) from use of the work product by one's adversary. That the protection has been waived does not mean that the waiver necessarily extends to the world.

This is major litigation in which Johns-Manville has made a multimillion dollar commitment to develop its case. It has taken the lead in negotiating and following through on discovery orders that provide access to Federal Record Centers and other document repositories. It has made available documents from its searches to other party plaintiffs in the asbestos litigation. Now Johns-Manville is being asked to go

---

1. An inadvertent or mistaken disclosure may not constitute waiver. *See Lois Sportswear,* *U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y.1985).

one step further and provide one of the other plaintiff asbestos manufacturers with what it has paid its attorneys to develop—a comprehensive set of documents from which Johns-Manville will draw its exhibits at the forthcoming trial. To allow Fibreboard access to these documents goes beyond allowing a party that can pay for photocopying an exhibit on the public record to piggyback its case upon the trial preparation another party has undertaken and paid for.

■ Whether Johns-Manville has any proprietary rights in this tremendous effort that it has financed is not decisive; rather, the principle of fair play comes into existence when a party similarly situated[2] makes the type of demand Fibreboard urges here. It is determined, based on fairness considerations, that Fibreboard cannot have access to the documents themselves, which have not been put on the public record as yet, without making an appropriate payment toward the cost of their generation. That the Government has documents from Johns-Manville that could be used against Fibreboard works no prejudice. By this time Fibreboard should have submitted to the Government interrogatories and document requests that would call for supplementation pursuant to RUSCC 26(e)(3).

Thus, it is held that any waiver as to non-adversaries was technical and cannot be enforced against Johns-Manville unless Fibreboard sustains some of the expense of creating the 1,565–item set of documents.[3]

■ The question remains whether Fibreboard has shown the substantial need for and undue hardship incurred in obtaining the subject documents. Fibreboard asserts that the documents listed by Johns-Manville are relevant to its action. Specifically, Fibreboard needs 115 documents that are "especially relevant to an effort we are undertaking to try to determine the scope of the Government's role in the manufacture and use of asbestos-containing products during World War II." Declaration of William B. Griffin, Feb. 6, 1987, at ¶¶ 3, 5. Johns-Manville responds that Fibreboard's case is not set for trial and that at the conclusion of its own trial Johns-Manville will provide Fibreboard "with our entire proposed exhibit group." Johns-Manville's Br. filed Mar. 9, 1987, at 9. The court would not have so required, but, in any event, Johns-Manville defeats a showing of substantial need for the documents at this time.

Regarding undue hardship, Fibreboard attests that of 115 especially relevant documents, only 22 could be located among the documents Fibreboard has received from Johns-Manville, the Government, other asbestos manufacturer plaintiffs, and Fibreboard's other sources. Griffin Declaration, ¶¶ 4–6. This showing is insufficient. Because the consequences of allowing a motion to compel in these circumstances are so severe to the party that has developed the exhibit list and husbands the underlying documents, Fibreboard would be required to show that through its own efforts

**2.** Other considerations may control when the Government seeks to utilize in a case involving a third-party work product developed by a second party in separate litigation against the third party. For example, American Telephone & Telegraph Co. ("AT & T") defended simultaneously a private antitrust action brought by MCI Communications ("MCI") and a government antitrust proceeding. MCI at great expense had culled approximately 2.5 million documents from among 12 million produced by AT & T. MCI did not object to the Government's proposal to utilize MCI's computerized analysis of the AT & T documents, and AT & T ultimately was unsuccessful in thwarting the Government from using MCI's discovery. *AT & T v. Grady,* 594 F.2d 594 (7th Cir.), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). *See*

*generally* Marcus, *Myths and Reality in Protective Litigation,* 69 Cornell L.R. 1, 45 (1983).

**3.** Because Fibreboard has failed to make a showing of substantial need or undue hardship, it is unnecessary to determine the amount Fibreboard would be required to pay Johns-Manville as a condition for access to the documents before they are made exhibits at trial. A practical procedure for making this determination would be a showing by affidavit by the party resisting discovery of the attorneys' fees and expenses, as well as in-house costs, that were sustained in discovering and narrowing down the potential exhibits selected. Ten percent of any amount over $500,000 would be an appropriate contribution by a similarly situated party to avoid sustaining such expenses on its own.

it could not have secured a majority of the documents sought through inspection of Federal Record Centers or other repositories or that the majority of the documents sought (identified in a list of specified documents) were developed by Johns-Manville through its own sources to which Fibreboard did not have access. Absent a showing that most of the documents did not come from sources available to the movant, the movant has failed to make the showing of undue hardship envisaged by RUSCC 26(b)(2). There is simply no basis without a more concrete showing to determine whether Fibreboard would incur undue hardship in attempting to locate the documents that Johns-Manville has assembled for its exhibit list. And, to the extent the undue hardship might take the form of financial outlay, it would have been only appropriate to require Fibreboard to share in the cost of Johns-Manville's effort.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Fibreboard's motion to compel is denied.

2. Because the question of waiver is decided on policy grounds, an award of expenses for responding to the motion would be unjust. RUSCC 37(a)(4).