**LOCAL 851 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, by its court-appointed Independent Supervisor and Union Trustees, Plaintiff,**

v.

**KUEHNE & NAGEL AIR FREIGHT, INC., Kuehne & Nagel, Inc., and Anthony Razza, Defendants.**

No. 97–CV–378(EHN)(RML).

United States District Court, E.D. New York.

Oct. 9, 1998.

Unsealed Order Jan. 27, 1999.

Kurzman, Karelsen & Frank, LLP, New York City, by Richard E. Miller, for defendants Kuehne & Nagel Air Freight Inc. and Kuehne & Nagel, Inc.

Kurzman, Karelsen & Frank, LLP, New York City, by Richard E. Miller, for defendants Kuehne & Nagel Air Freight Inc. and Kuehne & Nagel, Inc.

## MEMORANDUM AND ORDER

LEVY, United States Magistrate Judge.

Presently before the court is a motion by defendants Kuehne & Nagel Air Freight, Inc. and Kuehne & Nagel, Inc. ("defendants" or "Kuehne & Nagel") for the return of an allegedly privileged document Kuehne & Nagel claim they inadvertently disclosed by appending it as an exhibit to the Declaration of Richard E. Miller in opposition to plaintiff's motion for a default judgment and in support of defendants' cross-motion, dated June 29, 1998 (annexed as Exhibit 3 to the letter of Richard E. Miller to the court, dated August 3, 1998 ("Miller Declaration")). Kuehne & Nagel seek a protective order to bar plaintiff Local 851 of the International Brotherhood of Teamsters ("plaintiff" or "Local 851") from using this document in discovery or at trial on the ground that it is protected by the attorney-client privilege. Opposing the motion, Local 851 argues that the communication at issue is not protected, or in the alternative, that Kuehne & Nagel waived the attorney-client privilege by serving the document on Local 851 for the purpose of filing it with the court pursuant to Judge Nickerson's rules. For the reasons stated below, Kuehne & Nagel's motion is denied.

## BACKGROUND

Familiarity with the underlying facts is assumed. Briefly, the document at issue is a two-page letter addressed to Fred Ebert, President of Kuehne & Nagel, Inc., from Kuehne & Nagel's attorney, Richard E. Miller, dated April 27, 1998 (the "Letter") (attached as Exhibit 1 and Exhibit 3F to the letter of Richard E. Miller to the court, dated August 3, 1998 (the "Miller Letter")).[1]

DePetris & Bachrach, New York City, by Ronald DePetris, Independent Supervisor and counsel for plaintiff.

---

1. A copy of the Letter is annexed to this Memorandum and Order. The court notes that the original Letter was not marked "confidential."

The Letter was attached as Exhibit F to the Declaration of Richard E. Miller, dated June 29, 1998. Defendants' counsel asserts that this letter, which defendants claim contains privileged communications, was inadvertently substituted for another letter of the same date addressed to plaintiff's attorney, Ronald DePetris. (Miller Letter at 2.) Defendants did not become aware of the error until July 28, 1998 when DePetris notified Miller that he had the Letter in his possession. (*Id.*) Miller accepts responsibility for the error and acknowledges that final review of the motion papers was his responsibility. (*Id.* at 3; Transcript of Civil Cause for Conference, dated August 10, 1998 ("Tr.") at 5.) Miller posits that either he or a member of his staff may have attached the wrong letter because the dates were the same and both letters were printed on the firm's stationery. (Miller Letter at 3.) Miller argues that disclosure was clearly inadvertent because his Declaration identified Exhibit F as a letter addressed to Ronald DePetris, whereas the Exhibit F that defendants served consisted of a letter addressed to Fred Ebert. (*Id.* at 2; Miller Declaration, ¶ 3.).) Assuming, without further showing, that the Letter is privileged, Kuehne & Nagel assert that the attorney-client privilege was not waived with respect to this purportedly confidential communication between Miller and Ebert, and seek an order directing plaintiff to return

the Letter and barring plaintiff from using information contained in the Letter for any purpose. *Id.* at 2.) In response, Local 851 contends that the Letter was not a privileged attorney-client communication or, in the alternative, that Kuehne & Nagel's inadvertent disclosure of the Letter waived any applicable privilege because (1) the defendants failed to use reasonable precautions to maintain its confidentiality and (2) Kuehne & Nagel asserted defendants' good faith conduct in this litigation in their opposition and cross-motion. (Letter from Ronald DePetris to the court, dated August 6, 1998 ("DePetris Letter") at 2.)

## DISCUSSION

For purposes of this decision it is not necessary to determine whether the document at issue is privileged.[2] Instead, assuming *arguendo* that the Letter is privileged, the pertinent issue is whether defendants' conduct in this case was so careless as to warrant waiver of the attorney-client privilege where a protected document was inadvertently served on the plaintiff for filing with the court. For the reasons discussed below the court finds that it was.

Voluntary disclosure of privileged communications to a third party results in waiver of the attorney-client privilege and, where applicable, work product immunity.[3]

---

2. The attorney-client privilege protects confidential communications between an attorney and a client for the purpose of obtaining legal advice or services. The privilege shields from discovery advice given by the attorney to the client as well as communications from the client to the attorney. *In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 282 (S.D.N.Y.1995) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). Since the claims in this action are based on federal statutes, privilege issues are governed by common law. *See Fry v. McCall*, No. 95 Civ.1915, 1998 WL 273035, at *1, 1998 U.S. Dist. LEXIS 7833, at *3 (S.D.N.Y. May 28, 1998) (citing Fed.R.Evid. 501). The party seeking to invoke the attorney-client privilege has the burden of proving the facts on which the claim is based. *Id., Large v. Our Lady of Mercy Med. Ctr.*, No. 94 Civ. 5986, 1998 WL 65995, at *3, 1998 U.S. Dist. LEXIS 1702, at *7 (S.D.N.Y. Feb. 17, 1998) (citing *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.), *cert. denied*, 519 U.S. 927, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996); *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir.1989)).

The burden may be satisfied only by an evidentiary showing supported by competent evidence. *Large*, 1998 WL 65995, at *3, 1998 U.S. Dist. LEXIS 1702, at *7 ("[A] party must present competent evidence and not merely conclusory or 'ipse dixit' assertions of counsel."). Here, defendants did not submit affidavits or equivalent statements demonstrating that the document at issue was a communication between counsel and client that was intended to be and actually was kept confidential, and that it was made to provide legal advice or services. Instead the document is assumed by counsel to speak for itself. (Miller Letter at 1; DePetris Letter at 3; Tr. at 3.) Indeed, the Letter does not appear to contain either confidential communications from a client or legal advice. Nonetheless, although defendants may not have properly asserted the attorney-client privilege, the court will assume for purposes of this motion that the letter reflects privileged communications.

3. If the document at issue is privileged, the disputed portions of the Letter would more likely

*United States v. Gangi,* 1 F.Supp.2d 256, 263 (S.D.N.Y.1998) ("Even privileged documents, however, are not protected if a party voluntarily discloses them."); *Aramony v. United Way of Am.,* 969 F.Supp. 226, 235 (S.D.N.Y. 1997); *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* No. 95 Civ. 8833, 1997 U.S. Dist. LEXIS 20692, at *4 (S.D.N.Y. Dec. 31, 1997); *Prescient Partners, L.P. v. Fieldcrest Cannon. Inc.,* No. 96 Civ. 7590, 1997 WL 736726, at *4, 1997 U.S. Dist. LEXIS 18818, at *12 (S.D.N.Y. Nov. 26, 1997); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.,* No. 96 Civ. 2064, 1996 U.S. Dist. LEXIS 17094, at *9 (S.D.N.Y. Feb. 10, 1996); *Stratagem Dev. Corp. v. Heron Int'l,* 153 F.R.D. 535, 543 (S.D.N.Y.1994). Inadvertent disclosure will be deemed waiver when caused by the disclosing party's inadequate precautions to maintain the confidentiality of the privileged communication.[4] *See Gangi,* 1 F.Supp.2d at 264 ("[I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels.") (quoting

*In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989); *Fry v. McCall,* No. 95 Civ. 1915, 1998 WL 273035, at *3, 1998 U.S. Dist. LEXIS 7833, at *3 (S.D.N.Y. May 28, 1998) ("[D]isclosures may occur under circumstances of such extreme or gross negligence as to warrant deeming the act of disclosure to be intentional.") (quoting *Bank Brussels Lambert v. Credit Lyonnais (Suisse),* 160 F.R.D. 437, 443 (S.D.N.Y.1995). Courts generally examine whether the disclosure resulted from excusable inadvertence or whether a litigant's [5] carelessness waives the attorney-client privilege. *Prescient,* 1997 WL 736726, at *4, 1997 U.S. Dist. LEXIS 18818, at *13 (stating where disclosure is inadvertent the privilege will not be waived unless the producing party's conduct was "so careless as to suggest that it was not concerned with the protection of the asserted privilege") (quoting *Aramony,* 969 F.Supp. at 235); *Lloyds Bank PLC v. Republic of Ecuador,* No. 96 Civ. 1789, 1997 WL 96591, at *3, 1997 U.S. Dist. LEXIS 2416, at *10 (S.D.N.Y. Mar. 5, 1997); *Liz Claiborne,* 1996 U.S. Dist. LEXIS

---

qualify as attorney work product, as they appear to contain the mental impressions of counsel. However, the court need not make this determination since neither party addressed the issue. *See* Fed.R.Civ.P. 26(b)(3); *Smith v. Conway Org. Inc.,* 154 F.R.D. 73 (S.D.N.Y.1994) (noting failure to assert work product immunity or attorney-client privilege with respect to the production of certain documents results in waiver of protection in a timely manner); *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l Inc.,* 130 F.R.D. 28 (S.D.N.Y.1990) (attorney's failure to specify work product as the particular privilege protecting documents waived work product immunity for those documents). At any rate, when disclosure is made to an adversary, as was the case here, the analysis is the same for both the attorney-client privilege and work product immunity. *See International Bus. Machines Corp. v. United States,* 37 Fed.Cl. 599 (1997) (differences between the attorney-client privilege and work product immunity do not alter the outcome when the disclosure is made to an adversary in litigation). *See Gangi,* 1 F.Supp.2d 256 (S.D.N.Y. 1998); *Prescient,* 1997 WL 736726, 1997 U.S. Dist. LEXIS 18818; *Liz Claiborne,* 1996 U.S. Dist. LEXIS 17094; *Bowne of NYC, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 473 (S.D.N.Y.1993) (analyzing waiver of work product immunity).

4.  Courts have taken three different approaches to the issue of inadvertent disclosure: (1) inadvertent disclosure can never constitute waiver; (2) inadvertent disclosure necessarily constitutes waiver; and (3) inadvertent disclosure may con-

stitute waiver only if the producing party fails to take reasonable steps to maintain their confidentiality. *Bank Brussels Lambert v. Credit Lyonnais (Suisse),* 160 F.R.D. 437, 442–44 (S.D.N.Y.1995). Specifically rejecting the reasoning advanced by the first and second approaches, courts in the Second Circuit follow the third so-called "intermediate" approach. *Id.; see also Gangi,* 1 F.Supp.2d at 264. Consequently, the court will apply the intermediate approach in analyzing defendants' disclosure.

5.  Neither party raised the issue of whether an attorney has the authority to waive the attorney-client privilege when it is the client, not the attorney, who holds the privilege for purposes of voluntary waiver. However, the fact that case law has developed to determine whether inadvertent disclosure in the context of document production may result in waiver of the attorney-client privilege, specifically the *Lois* standard repeatedly cited by the Second Circuit, supports the conclusion that in cases of inexcusable inadvertence, an attorney may waive the attorney-client privilege. *See* cases cited in text; *see also Lambert,* 160 F.R.D. at 442 (reasoning implied waivers are often found where an attorney has acted negligently and noting "it would be anomalous to treat the attorney-client privilege as more personal" than certain case dispositive rights that are deemed waived resulting from an attorney's carelessness, for example, failure to file claims within the statute of limitations or failure to file a timely notice of appeal).

17094, at *9 (noting courts in the Southern District of New York have found waiver of the privilege when the disclosing party "failed to take reasonable steps to maintain the confidentiality of the assertedly privileged documents"); *see also Desai v. American Int'l Underwriters*, No. 91 Civ. 7735, 1992 WL 110731, at *1, 1992 U.S. Dist. LEXIS 6894, at *2 (S.D.N.Y. May 12, 1992); *Eigenheim Bank v. Halpern*, 598 F.Supp. 988, 991 (S.D.N.Y.1984). This rule encourages open communication between counsel and client yet also creates "an incentive for counsel to engage in production carefully, since failure to take reasonable precautions will result in a waiver". *Lloyds*, 1997 WL 96591, at *3, 1997 U.S. Dist. LEXIS 2416, at *11.

■ Although the Letter was served on plaintiff for filing with the court pursuant to Judge Nickerson's rules,[6] and not produced during discovery, the case law that has developed concerning inadvertent disclosure of privileged communications during discovery, although not precisely on point, is instructive.[7] *See Gangi*, 1 F.Supp.2d at 264 ("The [*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985) ] factors are not perfectly applicable to this case because … we are concerned here with inadvertent filing, not production. Nonetheless, the Lois test is still a useful framework to apply…."); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 n. 19 (S.D.N.Y.1993) (explaining scope of waiver may be affected if disclosure

is made in a judicial proceeding). The standard for determining whether inadvertent disclosure of privileged documents waives the attorney-client privilege was first articulated in *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985). The four factors to be considered are: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery and the extent of the disclosure before their return is sought; and (4) "overreaching" issues of fairness. *Id.* at 105; *see also Gangi*, 1 F.Supp.2d at 264–266 (applying *Lois* factors, court found waiver occurred where disclosing party's actions in inadvertently submitting prosecution memo to the court was inexcusable); *Prescient*, 1997 WL 736726, at *5, 1997 U.S. Dist. LEXIS 18818, at *14 (citing *Lois*, 104 F.R.D. at 105); *Liz Claiborne*, 1996 U.S. Dist. LEXIS 17094, at *9 (citing *Lois*, 104 F.R.D. at 105). The *Lois* test recognizes that inadvertent production may be excusable in complex litigation but "also creates an incentive for counsel to guard the privilege closely, as the failure to take reasonable precautions will result in waiver." *See Gangi*, 1 F.Supp.2d at 263.

■ Under the *Lois* standard, the inadvertent disclosure of the allegedly privileged Letter in the instant case constitutes waiver of the attorney-client privilege. *See Gangi*, 1 F.Supp.2d at 264; *Prescient*, 1997 WL

---

6. Judge Eugene H. Nickerson's procedural rules governing service and filing of motions in civil cases, in relevant part, are as follows:

    (c). The original and two copies of all opposition papers with a cover letter shall be served on the original moving party. Service of one copy of such papers shall also be made upon all other adversaries. Only the transmittal letters accompanying the foregoing shall be filed with the Clerk.

    ….

    (f). When the motion has been fully briefed (including full briefing of any cross motions) and is ready for submission to the Court, the original moving party will file all original papers (including any relating to cross motions) with the Clerk, under cover of a transmittal letter listing separately each document submitted.

7. Although the instant case is analyzed under the *Lois* factors which recognize that inadvertent production during discovery may be excusable in

complex litigation so long as reasonable precautions are taken to protect the asserted privilege, *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y.1985), the document at issue here was served on the plaintiff for filing with the Clerk of Court pursuant to Paragraph (f) of Judge Nickerson's Rules. *See e.g. Gangi*, 1 F.Supp.2d at 263. It may fairly be argued that the degree of care taken by an attorney when reviewing documents to be placed into the public record should be greater than the standard established for inadvertent production of documents during discovery. However, because the facts of this case warrant waiver of the attorney-client privilege under the *Lois* standard, the court need not determine whether stricter accountability is warranted in circumstances of inadvertent disclosure of documents intended for public filing pursuant to chambers rules.

736726, at *5, 1997 U.S. Dist. LEXIS 18818, at *14; *Liz Claiborne*, 1996 U.S. Dist. LEXIS 17094, at *9; *Lois*, 104 F.R.D. at 105. Here, defendants' counsel failed to take appropriate steps to preserve the confidentiality of the Letter addressed to his client, Mr. Ebert. *See Lois*, 104 F.R.D. at 105. Upon the record before the court, Kuehne & Nagel's attorneys did not take reasonable precautions to avoid disclosure. Most notably, defendants' counsel failed to label the Letter as confidential or to employ a procedure for separating confidential communications from non-privileged material. Additionally, there is no evidence in the record that counsel adequately instructed subordinate employees regarding confidentiality, or performed a reasonable and thorough review of the opposition papers and attachments before they left the office, in order to ensure confidentiality. *See id.* Thus, defendants have not adequately explained why the purportedly privileged letter was not identified as such, for example by a confidential stamp similar to that which now appears on a copy of the same letter appended as Exhibit 1 and Exhibit 3F to the Miller Letter. (*See* Miller Letter ("The papers submitted as part of this application are marked confidential, in accordance with [the court's] suggestion, to indicate that they should not be made part of the public record in this case.").) The record further indicates that counsel did not employ a procedure to keep privileged documents separate from non-confidential communications, or simply failed to do so in this instance.[8] (Tr. at 28). *But see Aramony*, 969 F.Supp. at 236–237 (finding review adequate where senior associates removed any protected documents and placed them in separate folder in a separate location for further consideration or inclusion in a privilege log); *Lloyds*, 1997 WL 96591, at*3, 1997 U.S. Dist.

LEXIS 2416, at *12; *Prescient*, 1997 WL 736726, at *4-5, 1997 U.S. Dist. LEXIS 18818, at *12–15 (finding precautions reasonable where attorneys reviewed documents for privileged material and segregated any so identified for their inclusion in a privilege log). This failure to maintain adequate procedures to protect the confidentiality of privileged communications demonstrates a lack of reasonable precaution and supports a finding of waiver. *See Gangi*, 1 F.Supp2d at 265 (noting fact that government did not label prosecution memorandum confidential, privileged or work product contributed to finding of waiver); *Bank Brussels Lambert v. Chase Manhattan Bank*, Nos. 93 Civ. 5298, 93 Civ. 8270, 94 Civ. 1317, 93 Civ. 6876, 1996 WL 944011, at *5, 1996 U.S. Dist. LEXIS 18849, at *14 (S.D.N.Y. Dec. 19, 1996) (finding precautions unreasonable where documents were not adequately labeled to put others on notice of their confidential nature); *Large*, 1998 WL 65995, 1998 U.S. Dist. LEXIS 1702, at *14 (noting marking purportedly privileged material with "post it" notes not reasonable precautions).

Moreover, defendants' counsel either failed to review his staff's assembly of the opposition and cross-motion, or he failed to do so adequately.[9] (Miller Letter at 2–3, 5; Tr. at 24–25.) The lack of adequate supervisory review with respect to privileged information in the instant case also indicates disregard for the document's confidentiality. *See Liz Claiborne*, 1996 U.S. Dist. LEXIS 17094, at *7 (failure to take reasonable precautions found where attorney disclosed privileged material without personally screening each document when scope of discovery was limited). *But see Lois*, 104 F.R.D. at 105 (precautions "only just adequate" where attorney showed paralegals which types of documents were privileged before delegating the segre-

---

8. Neither in its letter motion to the court nor at oral argument did defendants' counsel identify any procedures for preserving the confidentiality of privileged documents, such as stamping documents as privileged or segregating confidential documents from those that were not privileged. Nor did counsel specify any instructions given to associates or support staff for avoiding the inadvertent disclosure of privileged communications. (*See* Miller Letter; Tr. at 3–41.)

9. Additionally, counsel for Kuehne & Nagel do not assert that their client reviewed the opposition and cross-motion to which the Letter was attached, nor that any attorney for Kuehne & Nagel realized the mistake during the month that elapsed before plaintiff's attorney notified opposing counsel, although it appears the documents were revisited as Kuehne & Nagel filed a reply memorandum for the cross-motion. (DePetris Letter at 5.) Again, these factors support a finding of waiver.

gation of documents to them). By Miller's own admission, counsel conducted a cursory screening of the document, limited to the date the Letter was written. Counsel apparently did not even check the addressee's name. (Miller Letter at 2–3; Tr. at 25 ("We all did a very foolish thing. We saw an April 27th date and a letterhead, and said oh, that's the letter.") .) However, as the author of the privileged letter as well as of the intended exhibit, both of which were dated April 27, 1998, Miller should have been on notice of the potential for error. Such a cursory review does not constitute reasonable precaution. The failure of Kuehne & Nagel's attorneys to conduct a careful review of documents to be filed with the court or to instruct their staff to conduct such a review contributes to the court's finding of waiver. *See Gangi,* 1 F.Supp.2d at 265 (noting attorney's lack of review of the document and fact that the government gave no instructions to FBI agents about the confidential nature of the Prosecution Memo weighed in favor of a finding of waiver); *Eigenheim,* 598 F.Supp. at 988 (advising inadvertent disclosure resulting from lax, careless, and inadequate procedure with regard to maintaining confidentiality of the privileged document constitutes waiver); *Liz Claiborne,* 1996 U.S. Dist. LEXIS 17094, at *10–12 (explaining disclosing party's failure to identify documents as privileged where scope of discovery was limited and counsel's failure to review carefully or personally screen potentially privileged communications weighed in favor of a finding of waiver).

▆ The second consideration under the *Lois* test is the time taken to rectify the error. *Lois,* 104 F.R.D. at 105; *see also Gangi,* 1 F.Supp.2d at 264–266. "Inordinate delay in claiming the privilege can prejudice the adversary and may be deemed waiver." *Lambert,* 160 F.R.D. at 445. Although a month had elapsed from the date of service, defendant satisfies the second *Lois* factor in that defendants' counsel requested the document's return upon learning of the inadvertent disclosure. (Miller Letter at 3 ("[W]e had no reason to look at Exhibit F after it left our office, and no one in my office was aware of this error until I received notice from Mr. DePetris after 6:00 PM on the

evening of July 28, 1998. I responded the next day.").); *see Gangi,* 1 F.Supp.2d at 266 (finding second factor satisfied where Government sought relief from the court the following day upon learning that privileged information had been disclosed).

Under the third factor, the scope of discovery and extent of disclosure, again the facts in the instant case support a finding of waiver. The analysis "focuses on the number of privileged documents disclosed in relation to the overall size of the document production ." *Prescient,* 1997 WL 736726, at *6, 1997 U.S. Dist. LEXIS 18818, at *18; *see also Liz Claiborne,* 1996 U.S. Dist. LEXIS 17094, at *14–15 ("[W]here the overall scope of production was limited . . . . failure to protect privileged documents is more likely to constitute waiver."). The inadvertent disclosure in the instant case did not result from the production of thousands of pages during a massive production; rather, the purportedly privileged letter was merely one of seven exhibits to a motion served on plaintiff for filing with the court pursuant to Judge Nickerson's rules. Again, these circumstances weigh heavily in favor of a finding of waiver. *See Gangi,* 1 F.Supp.2d at 266 (distinguishing inadvertent filing from inadvertent production based upon the scope of discovery by noting that this is not a case "where twenty-two documents out of 16,000 pages reviewed, and out of 3,000 pages requested, were claimed to be privileged"). Accordingly, defendants' counsel may not claim that the sheer volume of documents produced resulted in an excusable inadvertent disclosure of a small number of privileged materials. *See id.* (citing *Carter v. Gibbs,* 909 F.2d 1450 (Fed.Cir.1990), where Government waived work product privilege by inadvertently appending "an internal DOJ memorandum, containing work product, to the copy of the Government brief that was served on the opposing party"). *But see Aramony,* 969 F.Supp. at 236 (discussing *Lloyds,* 1997 WL 96591, at *3, 1997 U.S. Dist. LEXIS 2416, at *12, where " [t]he Court found an inspection of approximately 10,000 pages of documents adequate in which two attorneys spent more than fifty hours reviewing the documents once for responsiveness and once for poten-

tial privilege"); *Stratagem,* 153 F.R.D. at 544 (finding no waiver where six privileged documents were inadvertently disclosed during the production of 40,000 documents).

Additionally, there was complete disclosure of the privileged information because defendants' counsel served the Letter on his adversary. The information to be protected is clearly known to defendants' adversary because plaintiff's counsel discovered the error.[10] (DePetris Letter; Miller Letter at 3.) Here, the complete disclosure of the privileged communication supports a finding of waiver. *See Gangi,* 1 F.Supp.2d at 266 (noting fact that disclosure was inadvertent was irrelevant because "disclosure of attorney work product to an adversary in the litigation for which the attorney produced that information defeats the policy underlying the privilege.... Granting the motion would do no more than seal the bag from which the cat has already escaped.") (quoting *Carter v. Gibbs,* 909 F.2d 1450, 1451 (Fed.Cir.1990)); *International Digital Sys. Corp. v. Digital Equip. Corp.,* 120 F.R.D. 445, 449 (D.Mass. 1988) ("There is no order I can enter which erases from ... counsel's knowledge what has been disclosed.").

Finally, overarching issues of fairness also weigh in favor of a finding of waiver. This factor focuses on "whether the act of restoring immunity to an inadvertently disclosed document would be unfair." *Prescient,* 1997 WL 736726, at *7, 1997 U.S. Dist. LEXIS 18818, at *20 (quoting *Lambert,* 160 F.R.D. at 446). Case law supports a finding of waiver where a "party makes assertions or takes positions in a litigation that in effect put his privileged communication in issue." *Koster v. Chase Manhattan Bank,* No. 81 Civ. 5018, 1984 WL 883, at *4, 1984 U.S. Dist. LEXIS 23531, *10 (S.D.N.Y. Sept. 18, 1984); *see also Bowne of NYC, Inc.,* 150 F.R.D. at 487–88. Advancing claims or de-

fenses that make the protected information at issue relevant to the case may justify waiver in certain circumstances. *See Bowne,* 150 F.R.D. at 488 ("[E]ven if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.").

It is not for this court to determine the evidentiary weight of the Letter as it pertains to the underlying issues pending before the district court. However, to the extent that Kuehne & Nagel selectively present information to prove their good faith while simultaneously invoking the attorney-client privilege to bar Local 851 from challenging that assertion, this court may consider Kuehne & Nagel's conduct in determining overarching issues of fairness under the *Lois* test. Kuehne & Nagel assert that defendants acted in good faith in this litigation and that they were actively litigating at the time of their default. (Miller Declaration ¶ 7 ("Defendants' counsel were actively engaged in this case at the time of the alleged default."); Defendants' Memorandum of Law in Opposition to Default at 12, annexed as Exhibit C to DePetris Letter ("Defendants have proceeded with this litigation in good faith and demonstrated their intent to fulfill their obligations as litigants.").) The Letter contains information that may be relevant to challenging these assertions.[11] As such, Local 851 may be prejudiced by restoring immunity to the inadvertently disclosed Letter. Considerations of fairness, therefore, weigh in favor of allowing plaintiff to use the Letter in support of this argument before the district court. *See Bowne,* 150 F.R.D. at 488 (stating the Second Circuit has noted that "the privilege may implicitly be waived when the defendant asserts a claim that in fairness requires examination of protected communications") (quoting *United States v. Bilzerian,*

---

**10.** Although Kuehne & Nagel argue that Local 851 had an ethical obligation to return the Letter upon realizing it may have contained privileged information (Miller Letter at 5), this issue is not relevant to the court's determination of waiver resulting from inadvertent disclosure.

**11.** Local 851 maintains that, in addition to using the letter to challenge defendants' assertion of good faith, the Letter is critical to its efforts to

rebut Kuehne & Nagel's claim that they were actively litigating at the time of the default, as the Letter indicates the lawsuit had been quiet for some months. (DePetris Letter at 8.) Plaintiff argues that Kuehne & Nagel should not be permitted to shield this information from the district court's consideration by asserting the attorney-client privilege.

926 F.2d 1285 (2d Cir.1991); *United States v. Western Elec. Co.,* 132 F.R.D. 1, 3 (1990) (noting party cannot assert work product immunity as to documents that undermine position where previous work product produced put counsel's actions at issue); *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.,* 125 F.R.D. 578, 590 (N.D.N.Y. 1989) (discussing waiver resulting from party's presentation of material to prove point while using privilege to preclude opponent from challenging that assertion).

## CONCLUSION

For the foregoing reasons, Kuehne & Nagel's conduct in this case constitutes inexcusable carelessness warranting waiver of the attorney-client privilege under the principles enunciated by *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103 (S.D.N.Y.1985), and its progeny. Accordingly, defendants' motion is denied.

SO ORDERED.

## ATTACHMENT

### KURZMAN KARELSEN & FRANK, LLP

230 PARK AVENUE
NEW YORK, NY 10169

(212) 867-9500

FAX (212) 599-1759

**CONFIDENTIAL**

IANK E. KARELSEN, III
IANLEY E. MARGOLIES
ICHARD E. MILLER
RNEST L. BIAL
ICHAEL P. GRAFF
HYLLIS H. WEISBERG
OSEPH F. SEMINARA
AAC A. SAUFER
EIRORE A. CARSON
OUIS L NEWMAN
L DAVIS JOHNSON
ETER G. GOODMAN

COUNSEL
AMUEL B. SEIDEL
LAN DITCHIK
AVID YAVARKOVSKY

April 27, 1998

JOANNE S. LEHU
MARISA GUARDO
JUDITH D. GRIMALDI
JOEL DITCHIK
JUDO H. COHEN
DEBORA L. ABRAMS
ERIC J. LEVINE
JOANNE B. SPELLANE
ANNA B. MELHEM
MICHAEL A. SISKIN

NEW JERSEY OFFICE
560 SYLVAN AVENUE
ENGLEWOOD CLIFFS, NJ 07632
(201) 568-6620
FAX (201) 568-8755

BY OVERNIGHT DELIVERY

Fred Ebert, President
Kuehne & Nagel, Inc.
10 Exchange Place
19th Floor
Jersey City, New Jersey 07302

Re: Local 851, Teamsters v. Kuehne & Nagel
    97-CV-0378 (EHN) and (RL)

Dear Mr. Ebert:

I will be out of the country until Monday, May 18, 1998. Before leaving; however, I wish to bring you up-to-date on the lawsuit.

Our motions to dismiss the complaint and to have the judge disqualify himself, have been denied. This was anticipated, at least in part. The basis for the motion to dismiss the complaint will be utilized by us throughout the proceedings. It will also form the basis of what may be a motion for summary judgment after discovery.

Enclosed is a copy of an answer and counterclaim by Kuehne & Nagel in this action. Also enclosed is a copy of the complaint so that you can understand the denials. Pleadings are technical. You may be interested in the counterclaim which essentially asserts that Local 851 is itself a racketeering enterprise and has damaged Kuehne & Nagel.

Fred Ebert, President
Kuehne & Nagel, Inc.
April 27, 1998
Page 2

CONFIDENTIAL

The answers by Mr. DePetris to our interrogatories are wholly inadequate. His document production is also going to be inadequate. Enclosed is a copy of my letter to him which brings you up-to-date.

The information available to me is that the treasury of the International Union is empty. If that is so, the ability of Local 851 to finance this litigation is in serious question. I previously discussed this with you.

We are going to continue to be agressive and make the Union work, in hope that the people making the decisions will see that this law suit is not cost effective for the Union.

At the same time we are continuing to watch for information about a new election which might result in Mr. Hoffa becoming President of the IBT. As I previously indicated, if this happens, it could change the complexion of the litigation.

The law suit has been quiet for a number of months which has relieved some of the financial pressure of legal fees.

I hope you and Mr. Wunn are well. I will communicate with you upon my return to the office.

Sincerely,

Richard E. Miller

REM/cj
Encls.

cc: Daniel Nobel, Esq. (by hand) (w/encl)