**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for New Bank of New England, Plaintiff,**

v.

**MARINE MIDLAND REALTY CREDIT CORPORATION, a Delaware Corporation, and Delaware Credit Corp. (USA), a Delaware Corporation, Defendants.**

Civ. A. No. 91–00335–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 19, 1991.

John E. Harrison, John E. Pasierb, Harrison, Golden & Hughes, P.C., McLean, Va.

John S. Stump, Thomas F. Farrell, II, Tobin D. Kern, McGuire, Woods, Battle & Boothe, Alexandria, Va., Edward S. Bloomberg, Alan Wishnoff, Buffalo, N.Y.

MEMORANDUM OPINION

ELLIS, District Judge.

The inadvertent production of a privileged document is a specter that

haunts every document intensive case. In the instant matter, this specter has materialized. Specifically, three copies of a letter to non-party Rowe Development Company ("Rowe") from its counsel inadvertently fell into the hands of plaintiff, New Bank of New England ("NBNE"). In response, Rowe, Rowe Properties–Bank Street Limited Partnership, Steven P. Settlage and the Estate of A. Kemp Rowe have filed a joint Motion for a Protective Order.[1]

Specifically, Rowe requests the Court to issue an order (i) requiring NBNE to return the letters and (ii) precluding NBNE from making any use of the letter. For the reasons stated below, Rowe's motion is denied.

## I.

This attorney-client privilege waiver dispute arises in the context of litigation between two lenders on an office building construction loan. NBNE and defendants loaned a total of $30,800,000 to Rowe Properties for the construction of the office building. In the course of the litigation, NBNE obtained a subpoena against Rowe, who in response, produced a large number of documents. Movant estimates that at least 50,000 documents were produced. NBNE, on the other hand, believes that the correct number of documents produced is probably closer to 15,000, but certainly no more than 20,000. One of the documents included in this mass of documents produced was a letter to Steven Settlage, Rowe's president, from Rowe's attorney, Charles T. Clark. It is not disputed that the letter contains legal advice on the controversy, which is at the heart of this litigation. The privileged nature of the letter is confirmed by the following legend that appears on the third page: *"THIS LETTER AND THE EXHIBITS ATTACHED HERETO ARE ATTORNEY WORK PRODUCT AND PROTECTED BY ATTORNEY/CLIENT PRIVILEGE."*

**1.** Since the document in question is a communication between Rowe and its attorney, the privilege belongs only to Rowe. Thus, the movants other than Rowe have no privilege with respect

The record reflects that three copies of the letter were inadvertently disclosed. The circumstances are as follows: On July 3, 1991, Rowe's attorney and his assistant spent the entire day reviewing documents in anticipation of delivering them to NBNE pursuant to the subpoena. As a result of the review, Rowe's counsel found and removed several copies of the letter from the mass of documents, but overlooked three other copies. Subsequently, the documents were made available to NBNE's representatives in Rowe's offices, where, on several occasions, NBNE's counsel was given the opportunity to review the documents and select those he wished to copy. Rowe's counsel was not present while plaintiff reviewed the documents, nor did he return at any point to conduct any further review of the documents.

Predictably, NBNE's representatives found and copied the letter on three occasions. The first disclosure occurred on July 8, 1991. During a deposition on the same day, plaintiff's counsel sought to have the letter marked as an exhibit. Rowe's counsel objected on the ground that the letter was protected by attorney-client privilege. Consistent with this claim, Rowe's counsel took custody of the letter. NBNE then filed a Motion for a Rule to Show Cause in order to compel Rowe to give up the letter on the ground that its production had effected a waiver of the privilege. The motion was withdrawn when NBNE's counsel reported that a second copy of the letter had been found at Rowe's office on July 10. The next day, Rowe filed its Motion for a Protective Order, requesting the Court to issue an order requiring NBNE to return the letter and precluding NBNE from making any use of the letter. Arguments were heard on July 12. On the same day, NBNE found among the mass of documents produced yet another version of the letter, a rough draft.

## II.

The knotty question of whether inadvertent disclosure waives attorney-client

to the document and have no standing to bring this motion. Accordingly, the Court considers the motion to be brought by Rowe alone.

privilege has spawned three distinct lines of authority. At one extreme lies the traditional rule, as pronounced by Dean Wigmore, which holds that the privilege is destroyed by any involuntary disclosure, even when the receiving party obtains the information through theft or eavesdropping.[2] This rule's rationale is that the privilege interferes with the courts' ability to determine the truth, and so must be construed narrowly.

> [T]he privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete.... It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.

*N.L.R.B. v. Harvey*, 349 F.2d 900, 907 (4th Cir.1965) (*quoting* 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961)).

Ultimately, the Wigmore rule is unsatisfying; it fails to take into account the fact that the privilege is typically lost only when waived. And waiver does not typically occur unless a known right is deliberately relinquished. Yet, it seems clear that gross negligence or recklessness can rise to the level of a waiver, while inadvertent disclosure through mere negligence or misfortune may not rise to this level. Moreover, the Wigmore rule, born in an earlier era, seems too harsh in light of the vast volume of documents disclosed in modern litigation. As *Transamerica Computer v. International Business Machines*, 573 F.2d 646 (9th Cir.1978) illustrates, some document productions are so massive, and the time constraints so stringent, that the disclosing party is "in a very practical way,

'compelled' to produce privileged documents which it certainly would have withheld and would not have produced had the discovery program proceeded under a less demanding schedule." 573 F.2d at 651–652 (disclosing party required to screen 17 million documents in three months); *see also United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir.1987) (secretary's delivery of tapes under the mistaken impression that they were blank did not waive privilege because the disclosure was "sufficiently involuntary and inadvertent as to be inconsistent with a theory of waiver"), *aff'd in relevant part and vacated in part*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

If the Wigmore rule is at one extreme, the "no waiver" rule is at the other. This rule, adopted by fewer courts, holds that negligence on the part of counsel cannot constitute waiver because the privilege belongs only to the client, and not to the attorney. "[I]f we are serious about the attorney-client privilege and its relation to the *client's* welfare, we should require more than such negligence by *counsel* before the client can be deemed to have given up the privilege." *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951, 955 (N.D.Ill. 1982) (emphasis in the original). Furthermore, this rule argues, a waiver cannot occur by inference; a waiver is an "intentional relinquishment or abandonment of a known right. Inadvertent production is the antithesis of that concept." *Id.; see also Transamerica Computer v. International Business Machines*, 573 F.2d 646, 653 (9th Cir.1978) (Kennedy, J., concurring); *Connecticut Mutual Life Insurance Co. v. Shields*, 18 F.R.D. 448, 451 (S.D.N.Y.1955) ("Only the client can waive this privilege and, to support a finding of waiver, there must be evidence that he intended to waive

---

**2.** *See* 8 Wigmore, *Evidence* §§ 2325–2326, at 633–634 (McNaughton rev. 1961); *see also, e.g., O'Leary v. Purcell Co., Inc.*, 108 F.R.D. 641, 646 (M.D.N.C.1985) (voluntary production of a document during a Rule 34 procedure waives the attorney-client privilege); *Underwater Storage Inc. v. United States Rubber Company*, 314 F.Supp. 546, 549 (D.D.C.1970) ("Once the document was produced for inspection, it entered the public domain"); *Duplan Corporation v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1162

(D.S.C.1975) (same), *aff'd*, 540 F.2d 1215 (4th Cir.1976); *Rockland Industries, Inc. v. Frank Kasmir Assoc.*, 470 F.Supp. 1176, 1181 (N.D.Tex. 1979) (same); *W.R. Grace & Co. v. Pullman, Inc.*, 446 F.Supp. 771, 775 (W.D.Ok.1976) ("Notwithstanding the apparently voluminous amount of discovery involved, [the disclosing party] could have taken necessary steps to remove purportedly privileged documents prior to permitting discovery of same.").

it."); *Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.*, 109 F.R.D. 12, 21 (D.Neb.1985) (mere inadvertent disclosure does not waive the privilege); *IBM Corp. v. Sperry Rand Corp.*, 44 F.R.D. 10, 13 (D.Del.1968) (waiver must be clear and intentional).

The contrast of these two extreme rules points persuasively to the merit of a rule closer to some Aristotelian mean. It is just such a rule that the Fourth Circuit apparently has adopted. In *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (1984), Judge Russell, speaking for a unanimous panel, noted that documents might lose their privileged status if "the [disclosing] party did not 'take reasonable steps to insure and maintain their confidentiality.'" (*quoting Suburban Sew 'n Sweep, Inc. v. Swiss–Bernina, Inc.*, 91 F.R.D. 254, 258–59 (N.D.Ill.1981) (privilege waived when documents were placed in trash)). This rule is grounded in the notion that inadvertent disclosure is a species of waiver and must be analyzed in that light. Waivers must typically be intentional or knowing acts. Inadvertent disclosures are, by definition, unintentional acts, but disclosures may occur under circumstances of such extreme or gross negligence as to warrant deeming the act of disclosure to be intentional. Put another way, "[i]t is not too much to insist that if a client wishes to preserve the privilege under such circumstances, he must take some affirmative action to preserve confidentiality.... Taking or failing to take precautions may be considered as bearing on intent." 727 F.2d at 1352 (*quoting In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86, *reh. denied*, 414 U.S. 1052, 94 S.Ct. 556, 38 L.Ed.2d 340 (1973) (letters between party and his lawyer sent to ac-

countant were deemed not confidential because they were sent and handled in same manner as other non-confidential business records)). Thus, many courts in this circuit and elsewhere have concluded that inadvertent disclosure may constitute a waiver of the privilege where the circumstances of the disclosure reflect gross negligence or a failure to take reasonable precautions to avoid the disclosure.[3]

While it appears that the Fourth Circuit eschews the extremes and follows the middle road on the inadvertent disclosure-waiver issue, no circuit opinion includes extensive guidance on what types of inadvertent disclosures amount to waiver. That guidance can be found in the oft-cited case of *Lois Sportswear*, 104 F.R.D. 103, which sets forth a multifactor test that is consistent with the Fourth Circuit's remarks in *Grand Jury Proceedings*. In the words of that court,

> The elements that go into that determination include [1] the reasonableness of the precautions to prevent inadvertent disclosure, [2] the time taken to rectify the error, [3] the scope of the discovery and [4] the extent of the disclosure, [and (5) the overriding issue of fairness].

104 F.R.D. at 105. *Accord, Kansas City Power & Light Co. v. Pittsburg & Midway Coal Min. Co.*, 133 F.R.D. 171 (D.Kan. 1989); *Bud Antle*, 131 F.R.D. at 183; *Parkway Gallery*, 116 F.R.D. at 46, 50; *Hartford Fire Insurance*, 109 F.R.D. 323, 332. This test, applied to the case at bar, leads inexorably to the conclusion that Rowe's inadvertent disclosure of the letter occurred in circumstances that rise to the level of a waiver.

◼ The reasonableness of precautions taken to avoid inadvertent disclosures is, of

---

**3.** *See Transamerica Computer v. International Business Machines, supra; United States v. Zolin, supra; Permian Corp. v. United States*, 665 F.2d 1214, 1220 n. 11 (D.C.Cir.1981) (privilege waived when party took no steps to control damage after documents were disclosed); *Bud Antle, Inc. v. Grow–Tech Inc.*, 131 F.R.D. 179 (N.D.Cal. 1990); *Parkway Gallery v. Kittinger/Pennsylvania H. Group*, 116 F.R.D. 46 (M.D.N.C.1987); *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323 (N.D.Cal.1985); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103

(S.D.N.Y.1985); *Champion International Corp. v. International Paper Co.*, 486 F.Supp. 1328, 1332 (N.D.Ga.1980) ("intent to waive privilege is not necessary for waiver.... the disclosure need only be voluntary"); *Eigenheim Bank v. Halpern*, 598 F.Supp. 988, 991 (S.D.N.Y.1984) (carelessness in allowing a document to be inadvertently disclosed for a second time results in waiver); *Niagara Mohawk Power v. Stone & Webster Eng.*, 125 F.R.D. 578, 588 (N.D.N.Y.1989) (privilege is not waived by "excusable inadvertence").

course, a function of the circumstances presented. Perhaps the most important circumstance is the number of documents involved. As the number of documents grows, so too must the level of effort increase to avoid an inadvertent disclosure. Failure to meet this level of effort invites the inference of waiver. But the number of documents is not the only important factor. Time constraints may also bear significantly on what precautionary efforts would be reasonable in the circumstances. Thus, a party may be excused from the waiver consequences of an inadvertent disclosure where the number of documents to be screened is large and the time for screening short. *See Transamerica Computer*, 573 F.2d 646 (17 million documents to be screened in three months). By contrast, there is no compelling reason to relieve a party from the consequences of waiver where, for want of care or other reason, the party's screening effort was manifestly inadequate. The case at bar falls into this category. Whether the documents numbered 15,000 or 50,000, it cannot be doubted that this was a large document production carrying with it a substantial risk that privileged documents might be inadvertently disclosed unless a substantial screening effort was undertaken. In this instance, the record reflects that Rowe devoted only the efforts of two persons for one day to this task. This level of effort was inadequate in the circumstances; it created an unnecessarily high potential for an inadvertent disclosure. This weighs heavily in favor of deeming the resulting disclosure to be a waiver of the privilege.

The second factor—efforts taken to rectify the error that led to disclosure—also weighs in favor of waiver, although less decisively so. To be sure, Rowe's counsel acted with alacrity to object to the use of the letter at the July 8 deposition, and he took prompt steps to recover possession of the letter. But he was far less diligent in making any effort to prevent the problem from recurring. He took no steps to ascertain whether additional disclosures might occur. Given that one privileged document had been inadvertently disclosed, a prudent party would have reviewed the documents produced once again to ensure that other privileged documents were not overlooked. Rowe failed to take this step. Had it done so, it might well have discovered the other previously overlooked copies of the letter. In that event, it is unlikely that a waiver could be deemed to have occurred. In fact, however, Rowe's failure to conduct a check of the produced documents led to the inadvertent production of two more versions of the letter. Indeed, four days after the first disclosure, Rowe copied and delivered to NBNE the rough draft of the letter, which on its first page advertised prominently in underscored capital letters that it was a privileged communication. Rowe's inadequate efforts to rectify the error of the inadvertent disclosure supports the conclusion of waiver.

The next factor—the extent of the disclosure—also supports the waiver conclusion. Disclosure was complete. NBNE was given three opportunities to learn the contents of the letter. Two copies remain in NBNE's possession. Any order issued now by the Court would have only limited effect; it could not force NBNE to forget what has already been learned. *See Parkway Gallery*, 116 F.R.D. at 52 ("[w]hen disclosure is complete, a court order cannot restore confidentiality and, at best, can only attempt to restrain further erosion.").

The remaining issue, that of "fundamental fairness," does not save Rowe. It is seldom "fundamentally unfair" to allow the truth to be made public, and under the circumstances outlined above, the Court finds that it would not be fair to reward Rowe's carelessness with a protective order.

The sole remaining issue is the extent of the privilege waiver occasioned by the inadvertent disclosure of the letter. It is settled that loss of the attorney-client privilege extends " 'to the substance of a communication' . . . and requires the attorney to disclose 'the details underlying the data which was to be published." *In re Grand Jury Proceedings*, 727 F.2d at 1356 (quoting *United States v. Cote*, 456 F.2d 142, 145 (8th Cir.1972)); *see also In re Martin*

*Marietta Corp.*, 856 F.2d 619, 623–24 (4th Cir.1988) (same), *cert. denied Martin Marietta Corp. v. Pollard*, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989); *In re Sealed Case*, 676 F.2d 793, 809 (D.C.Cir. 1982) (waiver extends "to all other communications relating to the same subject matter"); *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222 (4th Cir.1976) (referring to "broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege").

Whether the general rule of subject matter waiver should apply in cases of inadvertent disclosure is less settled. Some courts apply a broad scope of waiver regardless of circumstances, e.g., *In re Sealed Case*, 877 F.2d 976 (D.C.Cir.1989) (subject matter waiver even where disclosure claimed to be inadvertent),[4] while others hold that "[i]n a proper case of inadvertent disclosure, the waiver should cover only the specific document in issue." *Parkway Gallery*, 116 F.R.D. at 52. In the circumstances at bar, the latter view is more appropriate. Nothing in this case permits the inference of any general intent to abandon confidentiality. "The general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate in the case of inadvertent disclosure, unless it is obvious a party is attempting to gain an advantage or make offensive or unfair use of the disclosure." *Id. See also Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 208 (N.D.Ind. 1990) (following *Parkway Gallery*); *International Digital Systems v. Digital Equipment Corp.*, 120 F.R.D. 445, 446 n. 1 (D.Mass.1988); *Standard Chartered Bank v. Ayala Intern. Holdings*, 111 F.R.D. 76, 85 (S.D.N.Y.1986); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 45–46 (D.Md. 1974) (disclosures during settlement restricted to actual communications and not subject matter in order to encourage settlements). No such attempt to gain an advantage or make unfair use of a disclosure has

been shown here. Accordingly, Rowe waived the privilege only with respect to the letter disclosed.

For the reasons stated above, Rowe's Motion for a Protective Order must be denied. An appropriate order has issued.

---

4. The Fourth Circuit's remarks in *In re Grand Jury Proceedings* can be read as implying that subject matter waiver might govern in all circumstances, but neither in this nor in its other decisions cited herein was the court squarely presented with a case of inadvertent disclosure comparable to the facts of the instant case.