**Jerry C. SCOTT, Plaintiff,**

v.

**Dan GLICKMAN, Secretary, U.S.
Department of Agriculture,
et al., Defendants.**

No. 4:99–CV–161–H4.

United States District Court,
E.D. North Carolina,
Eastern Division.

Jan. 12, 2001.

Patrick H. Flanagan, Gregory W. Brown, Cranfill, Sumner & Hartzog, Raleigh, NC, for Jerry C. Scott, plaintiff.

Jerri U. Dunston, Asst. U.S. Attorney, U.S. Attorney's Office, Special Assistant, Raleigh, NC, for Dan Glickman, United States Department of Agriculture, Samuel J. Coley, Bob Foil, Phillip Farland, defendants.

## ORDER

FLANAGAN, United States Magistrate Judge.

This matter is before the court upon defendants' motion to compel plaintiff to produce "Exhibit 14" to plaintiff's deposition, a document over which plaintiff asserts an attorney-client privilege. Plaintiff has responded and, pursuant to order entered December 29, 2000, provided the document to the court for its *in camera* inspection. The court has reviewed the document and this matter is ripe for adjudication.

## BACKGROUND

Plaintiff, a twenty-three (23) year employee of the United States Department of Agriculture ("USDA") who worked for most of his tenure as a District Director for the Agricultural Stabilization Service ("ASCS"), brought suit alleging disability discrimination. Defendants' first set of document requests sought copies of all documents which in any way relate to or support plaintiff's claims. In response, counsel for plaintiff made available a box of documents to counsel for defendants with the understanding that it would be taken to the U.S. Attorney's Office for inspection and copying, and then returned. Among the documents was a letter from plaintiff to his former counsel, Ray Davis which, according to defendants, sets forth plaintiff's recollection of his contacts with Equal Employment Opportunity ("EEO") counselor John Dumas regarding an EEO complaint.

During plaintiff's deposition on October 26, 2000, counsel for defendants marked the letter as "Exhibit 14" and presented it to plaintiff. Before any questions could be asked in reference to the letter, counsel for plaintiff objected to the use of the document and asserted that it was attorney-client privileged communication which inadvertently had been produced as a part of discovery. After much debate, on and off the record, the original document and all copies were either returned to plaintiff's counsel or destroyed in the presence of plaintiff's counsel. This motion to compel resulted.

## DISCUSSION

Defendants argue that the letter from plaintiff to his former counsel does not amount to confidential communication to which the attorney-client privilege applies. Alternatively, defendants argue that if the document is protected by the privilege, plaintiff waived the protection by producing it in discovery. Proper analysis of a privilege question must begin with Rule 501 of the Federal Rules of Evidence:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501; *see also Jaffee v. Redmond*, 518 U.S. 1, 8, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

The current matter is a civil case based upon a federal cause of action. Therefore, following the mandate of Rule 501, the court must apply "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law," *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *see also United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir.1996), *cert. denied*, 520 U.S. 1239, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997), and "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). The

protection of "full and frank" communication between lawyer and client "encourages observance of the law and aids in the administration of justice." *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

■ The privilege, however, "impedes full and free discovery of the truth." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984) (internal citation omitted); *see also United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (noting that the privilege stands "in derogation of the search for truth"). Therefore, the attorney-client privilege is to be narrowly construed, *see United States v. Oloyede*, 982 F.2d 133, 141 (4th Cir.1992) (noting narrow construction of privilege); *In re Grand Jury Subpoenas*, 902 F.2d 244, 248 (4th Cir.1990) (same); *In re Grand Jury Proceedings*, 727 F.2d at 1355 (same), and recognized "only to the very limited extent that … excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth," *Trammel*, 445 U.S. at 50, 100 S.Ct. 906.

■ The U.S. Court of Appeals for the Fourth Circuit ("Fourth Circuit") has adopted the "classic test" for determining the existence of an attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982) (quoting *United States v. Unit-*

*ed Shoe Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass.1950)).

The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. *Jones,* 696 F.2d at 1072. The essence of the privilege is the protection of what was expressly made confidential or reasonably should have been assumed by the attorney as so intended and in determining whether it reasonably was to be assumed that confidentiality was intended, the mere relationship of attorney-client does not warrant a presumption of confidentiality. *In re Grand Jury Proceedings,* 727 F.2d at 1355–56. Thus, the attorney-client privilege does not protect all aspects of the attorney-client relationship, it protects only confidential communications occurring between the lawyer and his client. *Hawkins v. Stables,* 148 F.3d 379, 383–384 (4th Cir.1998).

The document at issue is a handwritten letter from plaintiff to his former counsel, apparently sent via telecopier, embodying plaintiff's recollections of his contacts with an EEO counselor. Defendants assert that the document is a "mere recitation of facts" and that there is nothing about the substance of the letter which reveals that the writer and recipient intended it to be confidential. However, the apparent origination and the form of the letter override defendants' argument. After reviewing the document *in camera,* as requested by defendants, the court concludes that the letter does qualify as a confidential communication protected by the attorney-client privilege.

Plaintiff, as the asserted holder of the privilege, was a client of the attorney to whom the letter was sent. He remains a client of the same law firm. The letter represents itself to be a recollection of contacts relating to a legal matter about which the attorney was providing plaintiff legal services and assistance. There is no contention that the communication was for the purpose of committing a crime or a tort. Further, plaintiff has claimed the privilege by virtue of opposing disclosure of the document.

Having established that the letter is a privileged communication, the remaining issue concerns whether the privilege is waived by its inadvertent production to defense counsel. The question of whether inadvertent disclosure waives attorney-client privilege has engendered three distinct lines of authority discussed in detail in *FDIC v. Marine Midland Realty Credit Corp.,* 138 F.R.D. 479 (E.D.Va.1991), a case cited by plaintiff and defendants in memoranda before the court.

At one extreme lies the rule that the privilege is destroyed by any involuntary disclosure, even when the receiving party procures the information through theft or eavesdropping. *See id.* at 481 n. 2 (collecting cases). At the other extreme is the "no waiver" rule adopted in fewer jurisdictions that holds that negligence on the part of counsel cannot constitute waiver because the privilege belongs only to the client, and not to the attorney. *See Mendenhall v. Barber–Greene Co.,* 531 F.Supp. 951, 955 (N.D.Ill. 1982) ("[I]f we are serious about the attorney-client privilege and its relation to the client's welfare, we should require more than such negligence by counsel before the client can be deemed to have given up the privilege."); *Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.,* 109 F.R.D. 12, 21 (D.Neb.1983) (mere inadvertent disclosure does not waive the privilege).

Many courts faced with this issue have adopted a middle approach between these two polar opposites by examining several factors to determine if the privilege should be deemed waived under the particular circumstances presented. *See Marine Midland,* 138 F.R.D. at 482, n. 3 (collecting cases). It is such a rule to which the Fourth Circuit subscribes. *Id.; see also In re Grand Jury Proceedings,* 727 F.2d at 1356 (noting that documents might lose their privileged status if the disclosing party did not take reasonable steps to ensure and maintain their confidentiality).

This rule is grounded in the premise that waivers typically must be intentional or knowing acts. "Inadvertent disclosures are, by definition, unintentional acts, but disclosures may occur under circumstances of such extreme or gross negligence as to warrant deeming the act of disclosure intentional" for the purposes of establishing waiver. *Marine*

*Midland,* 138 F.R.D. at 482. In other words, "[t]aking or failing to take precautions may be considered as bearing on intent to preserve confidentiality." *In re Grand Jury Proceedings,* 727 F.2d at 1356 (quoting *In re Horowitz,* 482 F.2d 72, 82 (2nd Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973)).

■ Guidance concerning what types of inadvertent disclosure will give rise to waiver also is found in the analysis undertaken in *Marine Midland.* The court, citing *Lois Sportswear v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y.1985), set forth the following elements that comprise such a determination: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and, (5) the overriding issue of fairness. *Marine Midland,* 138 F.R.D. at 482; *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.,* 133 F.R.D. 171, 172 (D.Kan.1989).

■ The reasonableness of precautions taken to avoid inadvertent disclosures is the primary factor to take into account and will vary according to the circumstances presented. One of the most important circumstances affecting the reasonableness of the precautions taken is the number of documents involved in the discovery request. *Id.* at 483. The level of effort must increase in proportion to the number of the documents involved and failure to meet the level of effort necessary invites the inference of waiver. *Id.*

■ Time constraints also may affect what precautionary efforts are reasonable under the circumstances. *See Transamerica Computer Co., Inc. v. International Business Machines, Corp.,* 573 F.2d 646, 651–652 (9th Cir.1978) (finding no waiver of privilege where 17 million documents had to be screened in a three month period where the disclosing party was "in a very practical way 'compelled' to produce privileged documents which it certainly would have withheld and would not have produced had the discovery program proceeded under a less demanding schedule").

■ Turning to the instant case, the letter at issue was included among documents contained in one large box, which plaintiff asserts was sufficiently heavy so as to require assistance by a member of plaintiff's law firm in carrying it to defense counsel's motor vehicle. There is no information of record to support a contention, nor is there any contention made, that this document review was particularly lengthy or onerous. Nine separate requests for production covering any document in plaintiff's possession supportive of his allegations were able to be responded to without apparent difficulty and the responsive documents assembled in one box.

Similarly, there appears nothing to suggest any stringent time constraints then were in effect. A review of the record reveals that the court allowed the parties more than nine months to complete discovery. The production apparently was subject to review by an attorney in advance but not to a protocol of numbering or identifying the documents to the production.

Other courts have found inadequate precautions under circumstances where the precautions taken were greater than that evidenced here or where the document request was more burdensome than that to which plaintiff was responding to in this case. *See Marine Midland,* 138 F.R.D. at 483 (two persons screening large document production over one day period was inadequate for the circumstances); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 48 (M.D.N.C.1987) (finding system of reviewing and double-checking large document request over two week period to be insufficient when defendant was not under any severe time constraints and could have insisted on an additional review).

In a case similar to this one, reasonable protective measures were found to be lacking where counsel had ample time to review a single box of documents before disclosing them pursuant to a discovery request. *See Liggett Group, Inc. v. Brown & Williamson Tobacco Corp.,* 116 F.R.D. 205, 207 (M.D.N.C.1986). There, evidence was shown that counsel at least attempted to divide the

one box of documents into two—one for production and the other to be withheld. *Id.*

In the instant case, plaintiff asserts that an attorney reviewed the box of documents prior to its production; however, there is no showing that this review was extensive, time consuming, or embraced protective measures devised to prevent inadvertent production of materials deemed privileged. It appears from the record undisputed that the contents of the box were not subjected to the additional inspection which comes about through a protocol of numbering and identifying documents in response to a particular request, in advance of production. This suggests an inattentiveness particularly where plaintiff acceded control of the original documents to defendants by allowing the inspection and copying of the unmarked contents of the box to take place outside of plaintiff's counsel's presence. Pursuant to the portion of the deposition transcript filed with the motion, there was a dialogue between counsel concerning the significance of the absence of a Bates stamp on the letter which resolved itself into a determination that no Bates stamp appeared on any document in the production handed over to defense counsel for her inspection and copying at her work site. Given what is before the court, it cannot be said that reasonable protective measures were in place.

Generally, when no special efforts are made to ensure confidentiality, as appears evidenced in this matter, inadvertent production of documents pursuant to a discovery request waives any privilege. *O'Leary v. Purcell Co., Inc.,* 108 F.R.D. 641, 646 (M.D.N.C.1985) (collecting cases). Nevertheless, in extraordinary situations such as expedited discovery or massive document production, a limited inadvertent disclosure will not result necessarily in waiver. *See Transamerica Computer,* 573 F.2d at 646; *Lois Sportswear,* 104 F.R.D. at 105 (finding 22 privileged documents disclosed out of some 16,000 pages inspected to be barely preponderate evidence that disclosure was not a waiver of the privilege). Plaintiff, however, as detailed in the foregoing, has not shown any extraordinary situations presented in this matter.

In view of the total circumstances of the production detailed above, plaintiff has not satisfied the court that reasonable protective measures were employed in order to safeguard claims of privilege. Given its significance, this lack of precautionary efforts weighs heavily in favor of deeming the resulting disclosure to be a waiver of the attorney-client privilege.

The second factor, the time taken to rectify the error causing the inadvertent disclosure, has two components in this case. The inadvertent disclosure was not discovered until plaintiff's deposition, when the letter was attempted to be introduced as an exhibit, which took place several weeks after its disclosure. It was defendants' initiative in introducing the letter at deposition rather than any independent review by plaintiff which prompted the discovery of its production by plaintiff.

However, as soon as the document was presented during plaintiff's deposition, his counsel took immediate steps to remedy the mistaken disclosure. As a result, and after protracted negotiation with defense counsel, the original and all copies of the document were either returned to plaintiff's counsel or destroyed. *Cf. Permian Corp. v. United States,* 665 F.2d 1214, 1220 n. 11 (D.C.Cir. 1981) (privilege waived when party took no steps to control damage after documents were disclosed); *Marine Midland,* 138 F.R.D. at 483 (finding waiver where party failed to take steps to discover other previously overlooked privileged documents divulged after realizing that one privileged document already had been inadvertently disclosed).

The first component of the time element, the passage of time before discovery and the initiative of defendants in prompting the occasion for discovery by plaintiff, favors defendants. With respect to the second component, the promptness of any action by plaintiff upon discovery, plaintiff's vehement protestations at time of attempted introduction and the securing of all copies of the letter as the end result of these protestations, favors plaintiff.

The scope of the discovery does not appear to have been unduly broad in this case. While plaintiff does not indicate the number of documents involved, the discovery request only implicated in response a set of documents able to be presented in a single box. Accordingly, plaintiff has not demonstrated that the quantity of the documents involved should preclude a finding of waiver.

The extent of the disclosure entails the degree of disclosure necessary to constitute a waiver of the attorney-client privilege. A limited disclosure resulting from glancing at a document in an open file drawer during a discovery inspection may not warrant a finding of waiver when the party does not learn the "gist" of the document's contents. *Chubb Integrated Systems v. National Bank of Washington,* 103 F.R.D. 52, 63 (D.D.C.1984). However, disclosure is complete and confidentiality may be lost when the document is turned over and allowed to be copied, digested, and analyzed. In such a case it has been held that "the disclosure cannot be cured simply by a return of the documents. The privilege has been permanently destroyed." *In re Grand Jury Investigation of Ocean Transportation,* 604 F.2d 672, 675 (D.C.Cir. 1979).

Here, it appears that prior to the assertion of any privilege, plaintiff's counsel surrendered the entire box of uncounted documents to opposing counsel to inspect and copy outside the presence of plaintiff's attorneys. In accordance with the ordinary course of discovery, defendants were placed in the position of being able to copy the document as many times as desired, digest and analyze it contents, make notes about it and upon it, as apparently was done on the face of at least one copy of the letter, and attempt to introduce the document in the litigation. Therefore, disclosure was complete and in this instance supports a finding that the confidentiality of the now claimed privileged communication was lost.

The final element of the analysis concerns the overriding issue of fairness. Plaintiff contends that an ethics opinion from the North Carolina State Bar opining that "a lawyer in receipt of materials that appear on their face to be subject to the attorney-client privilege or otherwise confidential, which were inadvertently sent to the lawyer by the opposing party or opposing counsel, should refrain from examining the materials and return them to the sender," R.P.C. (July 18, 1997) (opinion issued under earlier version of North Carolina Rules of Professional Conduct), favors a finding of no waiver in this case.

The fairness element of the waiver analysis takes into account specific circumstances of a privileged communication now disclosed. It is not illogical to assume that documents are not privileged when they are collected in a box and provided by opposing counsel in the manner employed here, especially where there are no stamps or markings. Attorneys reasonably can be expected to read documents produced in response to discovery requests and no judicial order can require an attorney to forget what he already has read. *See Parkway Gallery,* 116 F.R.D. at 52 ("When disclosure is complete, a court order cannot restore confidentiality and, at best, can only attempt to restrain further erosion."). Since the attorney-client privilege impedes the full and free discovery of the truth and is to be narrowly construed, it is not unfair to allow the truth to be made public once inadvertently disclosed. Nor would it be fair to reward carelessness. *See Marine Midland,* 138 F.R.D. at 483.

In sum, the final element in the analysis also favors disclosure, under the circumstances presented. Important to this determination is that the document at issue purports to be a fact-specific chronology of contacts between plaintiff and an EEO officer pertinent to the matter now before the court, without any apparent signal on its face to the reader that the communication is privileged. It was allowed to be taken, reviewed and preserved by defendants through plaintiff's inattentiveness. That this disclosure did not become known to plaintiff through any action of his own but, instead, because defendants attempted to introduce it at plaintiff's deposition, also casts the fairness analysis in favor of defendants.

Examination of the requisite factors discloses that virtually all militate against the

position of plaintiff. The court finds that the disclosure of the letter labeled "Exhibit 14," while inadvertent, resulted in a waiver of the attorney-client privilege with respect to that document. Accordingly, the court directs plaintiff to make available to defendant "Exhibit 14" to plaintiff's deposition.

## CONCLUSION

Based on the foregoing, defendant's motion to compel is GRANTED and IT IS FURTHER ORDERED that plaintiff shall produce to defendants a copy of "Exhibit 14" to plaintiff's deposition. In the self-addressed and pre-stamped envelope provided, the court is returning this date by U.S. Mail to counsel for plaintiff the copy evidencing the original deposition sticker "Exhibit 14", made available for *in camera* inspection. Absent stipulation and agreement between the parties to other treatment, this is to be provided by plaintiff to the court reporter for inclusion with the original of the deposition transcript of plaintiff dated October 26, 2000 and its exhibits. Each party shall bear its own costs in this action.