**F.H. CHASE, INC., Plaintiff**

v.

**CLARK/GILFORD, A Joint Venture, et al., Defendant**

**No. RWT 04–CV–171.**

United States District Court, D. Maryland.

Oct. 26, 2004.

Anthony L. Meagher, Paul A. Fenn, Piper Rudnick LLP, Baltimore, MD, for Plaintiff.

Jeffrey D. Komarow, Bradley Arant Rose and White LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

TITUS, District Judge.

### BACKGROUND

This dispute arises out of the production of numerous documents during the discovery phase of a breach of contract dispute between the above-mentioned parties. As part of the document production, Defendants inadvertently transmitted to the Plaintiff numerous documents protected by the attorney-client privilege. Defendants requested that Plaintiff return the documents because they were privileged. Plaintiff refused, arguing that Defendants had waived the privilege. Defendants then filed a Motion for a Protective Order requesting this Court to order Plaintiff to return the documents and to refrain from using them in any way during this litigation.

### DISCUSSION

Initially, the parties disagree over the applicable law. Plaintiff cites case law from the Fourth Circuit and argues that the privilege is waived whenever any disclosure is made, whether inadvertent or not. Defendants cite Maryland state case law and argue that the court should weigh numerous factors to determine whether the inadvertent disclosure waived the privilege.

Federal Rule of Evidence 501 directs, *inter alia*, that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege

of a witness, person, government, State or political subdivision thereof shall be determined in accordance with state law." Because this case is an action for a breach of contract, Maryland law applies. Moreover, the cases cited by the Plaintiff for the proposition that the attorney client privilege should be narrowly construed are not cases considering the specific issue of inadvertent disclosure. *See In Re Grand Jury Proceedings,* 727 F.2d 1352 (4th Cir. 1984); *McCafferty's, Inc. v. The Bank of Glen Burnie,* 179 F.R.D. 163 (D.Md.1998). Thus, although the Court is cognizant of the overriding principle that the attorney client privilege is "to be strictly confined within the narrowest possible limits consistent with the logic of its principle[,]" in the context of inadvertent disclosure situations, the Court is persuaded that it should follow clear Maryland precedent. *In Re Grand Jury Proceedings,* 727 F.2d at 1355.

A recent decision of the Court of Special Appeals of Maryland summarized the various tests that have arisen for determining whether an inadvertent disclosure waives the client's right to assert the attorney client privilege. *Elkton Care Center Assocs. Ltd. P'Ship v. Quality Care Mgmt.,* 145 Md.App. 532, 805 A.2d 1177 (Md. Spec.App.2002). "[S]ome courts have adopted the 'strict test' or 'waiver' test, under which an inadvertent disclosure constitutes a waiver of the privilege. Some courts have adopted the 'lenient' or 'no waiver' test, under which the attorney's negligence cannot waive the privilege[.] ... A third intermediate view sensibly holds that the question whether disclosure during discovery results in loss of privilege protection depends very much on the circumstances[.]" *Id.* at 544, 805 A.2d 1177; *see also F.D.I.C. v. Marine Midland Realty Credit Corp.,* 138 F.R.D. 479, 480–82 (E.D.Va.1991). The Court of Special Appeals adopted the third view and considered the following factors to be relevant: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measure taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving a party of its error." *Id.* at 545, 805 A.2d 1177 (citing *Sampson Fire Sales v. Oaks,* 201 F.R.D. 351, 360 (M.D.Pa.2001)). As stated by the Eastern District of Virginia, "[i]nadvertent disclosures are, by definition, unintentional acts, but disclosures may occur under circumstances of such extreme or gross negligence as to warrant deeming the act of disclosure to be intentional." *F.D.I.C.,* 138 F.R.D. at 482. Thus, the resolution of disputes arising from inadvertent disclosures of privileged material is fact intensive.

█ In this case, as in many inadvertent disclosure cases, the first, second and third factors are related. "The reasonableness of precautions taken to avoid inadvertent disclosures is, of course, a function of the circumstances presented. Perhaps the most important circumstance is the number of documents involved.... Time constraints may also bear significantly on what precautionary efforts would be reasonable in the circumstances." *F.D.I.C.,* 138 F.R.D. at 483–84. In this case, Defendants reviewed thousands of documents beginning on July 8, 2004 and sent 7,155 of them to Plaintiff on July 30, 2004. Decl. of Walter Sears at ¶ 2, ¶ 6; Decl. of Paul Fenn at ¶ 2. Defendants now claim that 569 pages are privileged and should be returned. D's Mot. at 10. This is not a small number of documents in relation to the entire amount produced.

Defendants' attorneys and their assistants utilized in Data, a company specializing in litigation, to brand the documents with bates numbers and to print the docu-

ments. Sears Decl. at ¶ 5. The documents were sent to in Data via the internet after Defendants' non-attorney assistant created Lotus Notes databases containing all non-privileged and responsive documents. *Id.* That assistant inadvertently sent in Data the original data base, containing both privileged and non-responsive documents. *Id.* The mistake of uploading the entire document load rather than only the non-privileged and responsive documents was quite costly, both because of the potential waiver issue and the wasted resources of the initial separation. The mistake was especially damaging because the Defendants did not review the documents received from in Data prior to sending them out to the Plaintiff.

The failure to engage in a cursory review of the documents after receiving them from in Data, which would presumptively have caught the disclosure problem in this case, makes it very difficult to determine how these first three factors cut. Plaintiff argues that under *Amgen, Inc. v. Hoechst Marion Roussel,* 190 F.R.D. 287 (D.Mass. 2000), the failure to engage in a final review constitutes waiver. Defendants rebut by pointing to commentary which argues that "[f]ew cases demonstrate as graphically as ... the *Amgen* decision that what one judge will find to have been unpardonable carelessness leading to waiver, another looking at the same set of facts, would readily have found to have been pardonable inadvertence, resulting in no waiver." E. Epstein, *The Attorney–Client Privilege and the Work Product Doctrine* 325 (Amer. Bar Assoc. 4th Ed.2001). Considering *F.D.I.C.* (assigning only two people to review, at a minimum, 15,000 documents in one day) and *Elkton Care Center* (egregiously failing twice to realize the privileged nature of a document) this Court concludes that although the number and extent of disclosures is large the Defendants took reasonable precautions to prevent them.

With regard to the fourth factor, delay in rectifying the disclosures, the Court finds the Defendants to have acted with reasonable diligence. The documents were produced on July 30, 2004. On August 26, 2004 an assistant of the attorneys for the Defendants realized that privileged information had been transmitted to the Plaintiff. The assistant immediately informed the supervising attorney and on that day the attorney informed the Plaintiff of the inadvertent disclosure and requested the return of the documents. Sears Decl. ¶ 8. Plaintiff denied Defendants' request on September 14, 2004 and the motion and accompanying memorandum was filed on September 23, 2004.

Plaintiff argues that the Defendants unreasonably delayed rectification of the situation because they 1) did not inform Plaintiff's counsel of the inadvertent disclosure until twenty-seven days after the production, and 2) because Defendants did nothing in the time period between informing the Plaintiff and Plaintiff's response (nineteen days). The Court does not consider the time period between the inadvertent disclosure and the date that the request was sent to Plaintiff to constitute an unreasonable delay. Consistent with the factual assertions of Defendants, neither the attorneys nor the assistants were aware that disclosures had been made at the time of the production. Therefore, it would have been impossible for the Defendant to "make[ ] any effort to prevent the problem from reoccurring[,]" as was found relevant in *F.D.I.C.,* 138 F.R.D. at 483. Similarly, there is nothing unreasonable about permitting the opposition a sufficient amount of time to respond to Defendants' request that Plaintiff return the documents. Additionally, unlike in *Elkton Care Center,* Defendants did timely file a motion with the Court during the pre-trial discovery period. *See Elkton Care Center,* 145 Md.App. at 547, 805 A.2d 1177 (stating that the

fourth factor concerned with delay strongly favors finding a waiver because the issue was not brought before the Judge prior to trial).

Lastly, the final consideration of "fundamental fairness," *F.D.I.C.*, 138 F.R.D. at 483, does not tip the balance towards a finding of waiver. Although *F.D.I.C.* noted that "[i]t is seldom 'fundamentally unfair' to allow the truth to be made public," considering the other factors, the Court does not believe that justice requires that the documents be used in litigation. The proposition recognized in *F.D.I.C.* was simply a restatement of the Fourth Circuit's general caution that the attorney client privilege "is not favored by federal courts [because] ... the privilege impedes the full and free discovery of the truth, and is in derogation of the public's right to every man's evidence." *In Re Grand Jury Proceedings,* 727 F.2d at 1355 (citations omitted). Taking into account this overriding theme of privilege law, the Court nonetheless determines that the privilege has not been waived by this inadvertent disclosure.

In conclusion, although the number and the extent of the disclosures was substantial, that was a direct result of the way in which the inadvertent disclosure occurred. If the document reviewers had looked at, and then disclosed, all the privileged documents in this case, then the second and third factors may have forced this Court to find Defendants to be grossly negligent for making 500 mistakes. However, because the inadvertent disclosure in this case was the result of only one mistake, albeit a major one, this Court finds the attorney-client privilege to have remained intact.

## CONCLUSION

For the above stated reasons, Defendant's Motion for a Protective Order and Request for Expedited Consideration will, by separate order, be GRANTED.

### *ORDER*

Upon consideration of Defendants' Motion for a Protective Order and Request for Expedited Consideration [Paper No. 61], and opposition thereto, it is this 26th day of October, 2004, by the United States District Court for the District of Maryland,

**ORDERED**, that Defendants' Motion for a Protective Order and Request for Expedited Consideration [Paper No. 61] is **GRANTED**; and it is further

**ORDERED**, that Plaintiff shall return all privileged documents to the Defendants; and it is further

**ORDERED**, that Plaintiff is directed not to make any use or disclosure of the privileged documents.