SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

Lorraine K. CASSANO,
et al., Defendants.

No. 99 Civ. 3822(LAK).

United States District Court,
S.D. New York.

Sept. 28, 1999.

Juan Marcel Marcelino, District Adminis-
trator, David E. Marder, Kimberly M. Zim-
mer, for plaintiff.

Franklin D. Ormsten, Jericho, NY, for de-
fendants.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

By letter dated September 21, 1999, the
plaintiff informally applied for an order (i)
requiring defense counsel to return an in-
ternal SEC staff memorandum that the
Commission produced in discovery, and (ii)
enjoining defense counsel from further dis-
closing its contents. The Court now has re-
ceived responses to the SEC's request, a
reply from the SEC, heard argument and,
in the interests of expedition and with the
consent of the parties, treats the informal
application as a motion for the relief sought
therein.

*Facts*

The facts are set forth in the parties' cor-
respondence and are not the subject of any
material dispute. In briefest compass, the
memorandum in question, a document of
nearly 100 pages, is a draft of an action
memo prepared by staff for presentation to
the Commission. It reviews and weighs the
Commission's evidence, provides legal analy-

sis, and discusses the strengths and weaknesses of the Commission's case. Each page of the document is numbered by means of a sticker applied individually to each page. Nevertheless, it was not stamped "privileged" or "confidential," and it (or a copy of it) was included in a quantity of documents made available for inspection by defense counsel at the SEC offices.

It is not entirely clear how the document came to be among those produced to the defendants. According to the SEC, the investigation that led to this action was conducted out of the Boston Regional Office ("BRO"), and the documents were in that location. In preparation for production in this case, the privileged documents (in theory) were separated from those intended for production. Fifty to fifty-two cartons of material were identified as producible to the defendants. An experienced SEC staff attorney then reviewed that material over a period of days for the purpose of ensuring that no privileged documents were included. Following the completion of her review, those cartons were shipped to the SEC's New York Regional Office ("NYRO") for the purpose of making them available to defense counsel. The privileged documents that had been culled from the Commission's files were retained at the BRO.

The SEC and defense counsel reached an agreement that the documents produced would be available for inspection at the NYRO for a thirty day period. Defense counsel would identify those documents they wished to have copied for them during that period. The SEC then would send all the requested documents to a copying service, which would make the copies requested.

At the start of the appointed inspection period, a number of defense counsel appeared at the NYRO. Within a comparatively short period, one of them found the document in question, which was located in a file that contained documents produced by Russo Securities. This memorandum was located immediately behind a page containing only a handwritten notation, affixed by the SEC staff attorney in Boston, stating in substance that the documents behind the cover page had come from Russo Securities.[1]

Defense counsel understandably were very much interested in this document. Those present read it and at least one took extensive notes. One of their number then took this memorandum—alone out of the 50 or 52 boxes of material made available for inspection[2]—to the SEC paralegal supervising the defendants' document review and requested that she copy it for defense counsel immediately rather than put it aside for later copying with all other materials of interest to the defense. The paralegal telephoned plaintiff's lead counsel in Boston, told him that defense counsel had asked that she copy "one particular document" that day, instead of waiting until the end of the month in accordance with the prearrangement, and sought clearance to provide the requested copy. The SEC attorney acknowledged at oral argument that he asked for and received the Bates numbers stamped on the document. He did not retrieve the copy of the document retained in the BRO, either to ensure that the requested document was not privileged or to determine what particular document was perceived by defense counsel to be so important that they wanted it copied immediately. He simply told the paralegal that the document could be

1. Letter, Matthew C. Rueter to Court, Sept. 2, 1999, attachment.

2. At oral argument, the SEC staff attorney—who received the telephone call in question, wrote the SEC's letter application, and argued the matter—stated that the paralegal asked in substance if it would be all right to copy a few documents that had been requested by the defense. It is important to recognize that his first account, contained in the letter application, said that the paralegal asked him about "one particular document," not a few. Letter, SEC to Court, Sept. 15, 1999, at 2. The subtle shift came only after defense counsel responded to the SEC's application by arguing, *inter alia,* that the fact that the paralegal inquired about only a single document was material to the determination whether the attorney-client privilege had been waived. Letter, Charles B. Manuel, Jr. to Court, Sept. 17, 1999, at 2, 3. While the Court does not question the good faith and personal integrity of the attorney in question, who appears to have been entirely candid about this unfortunate incident, it finds that the account set forth in counsel's letter, which spoke of one document and preceded any suggestion that the number of documents inquired about was material, is more reliable.

copied and turned over to the defense on the assumption that it had come from the non-privileged production boxes. The paralegal promptly did so.

When defense counsel returned to his office, he checked the privilege log and found that this memorandum is not specifically listed there.[3] He thereupon telephoned two of his colleagues and asked them to circulate the memorandum to three of his clients and a number of other attorneys and others. By this time, the memorandum has been distributed to and studied by five defense attorneys, at least four clients, at least four other persons, and one member of Congress and his staff.

The SEC attorney in charge of this case finally learned on September 14 that the action memorandum had been produced twelve days earlier. This application was submitted on the following day.

### Discussion

 The law governing this issue in this circuit is straightforward. As the SEC contends, inadvertent production of a privileged document does not waive the privilege unless the producing party's conduct was "so careless as to suggest that it was not concerned with the protection of the asserted privilege."[4] In determining whether the production was inadvertent, courts consider (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery and extent of the disclosure, and (4) overarching issues of fairness.[5]

 The Commission argues that it took extensive precautions to ensure that privileged materials were not produced. It focuses on the (allegedly) painstaking review of all 50 or 52 boxes of material in the BRO by an experienced staff attorney, the object of which was to ensure that no privileged document found its way in the production.

As far as the BRO review is concerned, one of two things must be true. The document may have been in the materials intended for production, in which case the experienced staff attorney simply overlooked it. Alternatively, the document was not there when the review was made, the attorney missed nothing, but the document was inserted into the file after the review was completed. In the former case, the staff was careless. In the latter, it took insufficient precautions—none, so far as the record discloses—to ensure that the integrity of the boxes that had been reviewed for privileged materials was maintained. Moreover, it is difficult to understand why this document, given its sensitive nature, was not stamped "confidential" or "privileged."

But the review in the Boston office, in the Court's view, is not the proper or, at least, the principal focus. Here, defense counsel selected a single document and asked that it be copied immediately rather than treated as the parties had agreed. The specific document was brought to the attention of the attorney in charge of the case. The circumstances of the request clearly should have suggested to the SEC attorney that defense counsel had found what they regarded as gold at the end of the proverbial rainbow. Any attorney faced with such a request in comparable circumstances should have reviewed the document immediately, if only to find out what the other side thought so compelling. After all, these events should have suggested to SEC counsel that perhaps he had erred in assessing the case or previously

---

3. The privilege log contains an entry for a group of draft "action memos." The Commission now claims that that entry was intended to include this document.

4. *Aramony v. United Way of Am.*, 969 F.Supp. 226, 235 (S.D.N.Y.1997).

In truth, this formulation perhaps is not the most felicitous expression of what is intended. Counsel virtually always are "concerned" with protecting the confidentiality of privileged material. The same point might more accurately be put in terms of whether the party producing privileged material has been so careless as to surrender any claim that it has taken reasonable steps to ensure confidentiality.

5. *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, 1997 WL 736726, *5 (S.D.N.Y.1997) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y.1985)). *Accord, e.g., Local 851 of the Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F.Supp.2d 127, 131 (E.D.N.Y.1998); *United States v. Gangi*, 1 F.Supp.2d 256, 264 (S.D.N.Y.1998).

failed to appreciate the significance of the document, even putting aside any question of inadvertent production of a privileged document. Yet the SEC attorney authorized production of this document, sight unseen. Any other precautions that were taken, and there certainly were some, fade into insignificance in the face of such carelessness.

■ Much the same considerations compel the conclusion that the scope of the discovery and the extent of the disclosure favor the defendants as well. These factors recognize that the inadvertent production of one or a few privileged documents in a massive disclosure is not necessarily inconsistent with the exercise of due care to avoid such occurrences, as it is virtually impossible to avoid any error whatsoever in dealing with large volumes. The Commission understandably points to the 50 plus boxes of documents, which would be appropriate if the defense had requested that all of the documents be copied and this one had been copied along with everything else. But it is not appropriate here. This specific document was called to counsel's attention. A deliberate decision was made to produce it without looking at it. Thus, this factor cuts even more strongly in defendants' favor than it did in *United States v. Gangi,*[6] where an FBI agent inadvertently attached a copy of the government's prosecution memorandum to a copy of the indictment handed over in open court.[7]

Although the SEC acted promptly once it determined that the document had been produced, a factor cutting in its favor, the time taken to rectify the error, in all the circumstances, was excessive. There was no excuse for waiting 12 days to find out what the document was.

Finally, there are no overarching concerns of fairness dictating a contrary result. While the Commission, to be sure, is entitled to

privacy for its deliberative communications with counsel, it has the same obligation to protect the confidentiality of its communications as any private party. There is no reason why its carelessness should be disregarded. Moreover, this document has been distributed to a number of others. Although distribution has not been as wide as in *Gangi*,[8] this bell nevertheless would be very difficult to unring. Surely there would be little equity in some defendants going forward with the benefit of counsel who have read the memorandum while others do not.[9] Moreover, the SEC has not suggested that the safety or privacy of any witness would be compromised in any serious way absent the relief it seeks.

*Conclusion*

Accordingly, the plaintiff's motion is denied.[10]

SO ORDERED.

---

**6.** 1 F.Supp.2d 256.

**7.** *See id.* at 266.

**8.** *Id.* at 267.

**9.** *See id.*

**10.** Although the Court has concluded that the Commission has waived the privilege as to this document, it expresses no opinion as to whether

those defense counsel who reviewed the document acted appropriately, particularly prior to the point at which SEC counsel approved copying the document for defense counsel. *See, e.g., American Express v. Accu–Weather, Inc.,* No. 91 Civ. 6485(RWS), 1996 WL 346388, *2 (S.D.N.Y. June 25, 1996); Am. Bar Ass'n Standing Comm. on Ethics and Prof Resp., Formal Op. 92–368 (1992).