**ATRONIC INTERNATIONAL, GMBH, Plaintiff,**

v.

**SAI SEMISPECIALISTS OF AMERICA, INC., Defendant.**

No. 03–CV–4892(TCP)(MLO).

United States District Court, E.D. New York.

Oct. 18, 2005.

John J. Witmeyer, Esq., Ford Marrin Esposito Witmeyer & Gleser, LLP, New York, for Plaintiff.

Peter G. Goodman, Esq., Morgenthau & Greenes, LLP, New York, for Defendant.

*MEMORANDUM AND ORDER*

PLATT, District Judge.

Plaintiff Atronic International, GMBH ("Plaintiff" or "Atronic") has filed objections to a Report and Recommendation issued by United States Magistrate Judge Michael L. Orenstein on March 14, 2005 ("Order"). The documents at issue are two e-mails (1) an e-mail communication dated November 22,

2002 from an Atronic employee to Atronic's international counsel ("November 2002 e-mail") and (2) a December 11, 2002 e-mail from the same Atronic employee to the same counsel ("December 2002 e-mail"). According to the Defendant, the two e-mails were originally produced by the Plaintiff sometime at the end of 2003 as part of initial disclosures under Federal Rule of Civil Procedure 26. The e-mails were again produced to the Defendant on January 7, 2005 as a binder of exhibits that the Plaintiff intended to use at a subsequent deposition.

Once the Plaintiff realized it had unwittingly produced these communications, it sought an order from Judge Orenstein directing the return of the two documents and barring the Defendant from using information contained in the documents for any purpose.

In the Order, Magistrate Orenstein determined that at least one of the documents-the December 2002 e-mail-constituted privileged information. Assuming, nevertheless, that both e-mails were shielded by the attorney-client privilege, Judge Orenstein ultimately found that the Plaintiff's inadvertent disclosure of the two e-mails resulted in a waiver of Plaintiff's claim to privilege as to those documents.

The Plaintiff vehemently objects to the Order on the grounds that Judge Orenstein "ignored the reality that New York law does not recognize waiver of the attorney-client privilege to occur through inadvertent production." Plaintiff further alleges that Judge Orenstein "misapplied cases under federal law," misapprehended the law, and "was clearly motivated by his mistaken view."

■ New York law is not that absolute. It does recognize that inadvertent disclosure of documents containing legal advice may constitute a waiver of the attorney-client privilege. *See, e.g.,* 58A N.Y.Jur.2d § 880 (outlining factors used in determining whether inadvertent disclosure of attorney-client communications constitutes waiver of the privilege); *Manufacturers and Traders Trust Co. v. Servotronics, Inc.,* 132 A.D.2d 392, 400–401, 522 N.Y.S.2d 999 (1987) ("We reject the absolute view that an attorney may never waive the privilege"). While the standard for waiver of the privilege under New York State law [1] is worded differently than the federal one,[2] this is essentially a distinction without a meaningful difference. Moreover, New York federal district courts routinely apply the federal standard for inadvertent disclosure of attorney-client information. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y. 1985). The Court sees no reason why this federal district court should depart from this practice.

Accordingly, the Report and Recommendation is hereby adopted and affirmed.

SO ORDERED.

### *ORDER*

ORENSTEIN, United States Magistrate Judge.

The defendant herein moves by letter application for an order permitting it to retain and use for any purpose in this litigation two documents (among others) it received in response to its discovery demands from plaintiff in December 2003. *Goodman Letters,* dated February 9, 2005 and February 18, 2005. The two documents consist of: (1) a November 22, 2002 e-mail communication from Hartwig Schumann, the Atronic em-

---

1. New York State law recognizes a waiver of the attorney-client privilege for the inadvertent production of documents unless: (1) the party asserting the privilege intended to maintain confidentiality and took reasonable steps to prevents its disclosure, (2) promptly sought to remedy the situation after learning of the disclosure, and (3) the party in possession of the materials will not suffer undue prejudice if a protective order is granted. *AFA Protective Sys., Inc. v. City of New York,* 13 A.D.3d 564, 565, 788 N.Y.S.2d 128 (2d Dep't 2004).

2. Under the federal approach, courts balance four factors: (1) the reasonableness of the precautions taken by the producing party to prevent the inadvertent disclosure of privileged documents; (2) the volume of discovery versus the extent of the specific disclosure at issue; (3) the length of time taken by the producing party to rectify the disclosure; and (4) the overarching issues of fairness. *United States v. Rigas,* 281 F.Supp.2d 733, 738 (S.D.N.Y.2003) (citing *Lois Sportswear,* 104 F.R.D. at 105).

ployee who dealt principally with SAI concerning the contract in issue, to Rick Trachok, Atronic's international legal counsel, with several of plaintiff's employees listed as recipients of a copy (hereinafter the "November 2002 e-mail") and (2) a December 11, 2002 e-mail from Hartwig Schumann to Rick Trachok and Atronic's employee in Austria, Michael Scala (hereinafter the "December 2002 e-mail"). *Id.* Defendant argues that the e-mails at issue are not privileged documents, and contends in the alternative, that assuming *arguendo* that the documents were protected communications, plaintiff waived any privilege that may have attached to the documents. *Id.*

The plaintiff seeks an order directing the return of the two documents and barring defendant from using information contained in the documents for any purpose. *Witmeyer III Letter,* dated February 28, 2005. Plaintiff asserts that the e-mail communications at issue are protected from discovery because of the attorney-client privilege and that they were inadvertently produced in its response to defendant's discovery demands. *Id.*

### (a) Attorney Client Privilege

The attorney-client privilege protects from disclosure confidential communications made between a lawyer and his client for the purpose of obtaining or providing legal advice or services. *United States v. Construction Prods. Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996). "However, since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *see In re Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir.2000) (because the attorney-client privilege "stands in derogation of the public's right to every man's evidence, ... it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle") (internal quotation marks and citation omitted). The privilege attaches: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communica-

tions relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor, (8) except the protection be waived". *United States v. International Bhd. of Teamsters,* 119 F.3d 210, 214 (2d Cir.1997).

Because the basis for subject matter jurisdiction in the case at hand is diversity of citizenship, the Court applies New York privilege law. *See* Fed.R.Evid. 501; *Bowne of New York City v. AmBase Corp.,* 150 F.R.D. 465, 470 (S.D.N.Y.1993). In *Bowne,* the Court observed

New York law governing the attorney-client privilege is generally similar to accepted federal doctrine, albeit with certain variants to be noted. The privilege is defined by C.P.L.R. § 4503, which protects confidential communications made between the attorney ... and the client in the course of professional employment .... To sustain a claim of privilege, the party invoking it must demonstrate that the information at issue was a communication between client and counsel or his employee, that it was intended to be and was in fact kept confidential, and that it was made in order to assist in obtaining or providing legal advice or services to the client. If the communication concerns business matters, the privilege does not apply. Moreover, the privilege is vitiated if the contents of the communication are disclosed to others for reasons other than assistance of the attorney in the performance of legal services.

150 F.R.D. at 470 (internal quotation marks and citations omitted).

In the instant matter, plaintiff states in its opposition letter that the e-mail communications were confidential communications between client and counsel and were made in order to provide legal advice. Specifically, plaintiff states:

The two documents, two e-mails totaling three pages, were inadvertently produced by Atronic as it responded to SAI's document requests by producing hundreds of pages of documents. In each instance, Hartwig Schumann of Atronic e-mailed Richard Trachok, Atronic's international

legal counsel, in order to obtain advice on how to deal with SAI in the then-brewing dispute. Mr. Schumann was the Atronic employee who most dealt with SAI concerning the contract in issue. Mr. Trachok is a member of the Nevada law firm of Bible, Hoy and Trachok, P.C. and is admitted to practice law in Nevada. The two e-mails are privileged, which Atronic did not waive, and must be returned and not used in this case.

*Witmeyer III Letter*, dated February 28, 2005.

In reviewing the documents, the Court finds that the December 2002 e-mail from Hartwig Schumann to his counsel Rick Trachok and plaintiff's employee in Austria, Michael Scala (i) contains confidential communications between counsel and his client; (ii) relates to conversations Schumann had with defendant's employee concerning certain contract negotiations at issue which Schumann is relating to plaintiff's counsel and plaintiff's employee in Austria; and (iii) was made to plaintiff's counsel to facilitate the rendering of legal services. Thus, the Court deems the December 2002 e-mail privileged.

The November 2002 e-mail poses a closer question with respect to whether the document is a protected by the attorney-client privilege. While the document reflects that Atronic's employee Schumann addressed the November 2002 e-mail to Atronic's legal counsel Trachok, and listed four Atronic's employee as recipients of a copy of the communication, the communication does not appear to be made for the purposes of securing legal advice, but rather the contents concern factual business matters, including SAI order negotiations and delivery data. *See Bowne*, 150 F.R.D. at 470; *cf. TVT Records v. Island Def Jam*, 214 F.R.D. 143, 144 (S.D.N.Y. 2003) ("only communications related to legal as contrasted with business advice are protected") (internal quotation marks and citations omitted); *Rossi v. Blue Cross & Blue Shield of Greater New York*, 73 N.Y.2d 588, 592–93, 542 N.Y.S.2d 508, 510, 540 N.E.2d 703 (1989) (holding attorney-client privilege does not apply to communications concerning business matters); *Matter of Bekins Record*

*Storage Co.*, 62 N.Y.2d 324, 329, 476 N.Y.S.2d 806, 809, 465 N.E.2d 345 (1984) (same).

Moreover, plaintiff has not submitted an affidavit or equivalent statement demonstrating that the November 2002 e-mail was intended to be and was in fact kept confidential or that the e-mail was generated to obtain legal advice. On its face, the November 2002 e-mail does not appear to contain confidential communications from a client to its attorney. Hence, based on this record, the Court cannot deem the November 2002 e-mail a privileged attorney-client communication. Nevertheless, even though plaintiff may not have properly asserted the attorney-client privilege for the November 2002 e-mail, the Court will assume for the purposes of this application that both documents at issue reflect privileged communications.

**(b) Inadvertent Disclosure**

■ The voluntary disclosure of communications protected by the attorney-client privilege generally results in waiver of a claim of privilege as to those documents. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993); *United States v. Gangi*, 1 F.Supp.2d 256, 263 (S.D.N.Y.1998) ("Even privileged documents are not protected if a party voluntarily discloses them"). However, the "inadvertent production of a privileged document does not waive the privilege unless the producing party's conduct was so careless as to suggest that it was not concerned with the protection of the asserted privilege." *Securities and Exchange Commission v. Cassano*, 189 F.R.D. 83, 85 (S.D.N.Y.1999) (internal quotation marks and citation omitted); *Gangi*, 1 F.Supp.2d at 264 (same). This approach fosters "open communication between counsel and client and yet also creates an incentive for counsel to engage in production carefully, since failure to take reasonable precautions will result in waiver." *Local 851 of the Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F.Supp.2d 127, 130 (E.D.N.Y.1998).

"[A]lthough the federal courts have differed as to the legal consequences of a party's inadvertent disclosure of privileged information, the general consensus in this district is that the disclosing party may demonstrate,

in appropriate circumstances, that such production does not constitute a waiver of the privilege or work-product immunity and that it is entitled to the return of the mistakenly produced documents." *Lava Trading, Inc. v. Hartford Fire Ins. Co.,* 2005 WL 66892, at *2 (S.D.N.Y. Jan.11, 2005). Under this flexible approach, "courts are called upon to balance four relevant factors: (1) the reasonableness of the precautions taken by the producing party to prevent inadvertent disclosure of privileged documents; (2) the volume of discovery versus the extent of the specific disclosure issue; (3) the length of time taken by the producing party to rectify the disclosure; and (4) the overarching issue of fairness." *United States v. Rigas,* 281 F.Supp.2d 733, 738 (S.D.N.Y.2003).

■ Applying these factors to the instant matter, the Court finds the inadvertent disclosure of the privileged two e-mails constitutes waiver of the attorney client privilege. First, plaintiff's counsel failed to take adequate steps to preserve the confidentiality of the e-mails. For example, counsel failed to label the documents "confidential" or "privileged" so as to put others on notice of their privileged nature. *See Spanierman Gallery, Profit Sharing Plan v. Merritt,* 2003 WL 22909160, at *3 (S.D.N.Y.2003) (finding defendant failed to take reasonable precautions to preserve the privilege where defendant produced documents that were not labeled "confidential" or "privileged" and "there was no agreement . . . that the documents were to be treated privileged and confidential"); *Gangi,* 1 F.Supp.2d at 264 (noting that government's failure to designate as confidential or privileged a prosecution memorandum contributed to a finding of waiver); *Bank Brussels Lambert v. Chase Manhattan Bank,* 1996 WL 944011, at *5 (S.D.N.Y. Dec.19, 1996) (finding counsel failed to take appropriate steps to avoid disclosure where documents were not sufficiently labeled to put others on notice of the confidential nature of the materials); *Large v. Our Lady of Mercy Medical Center,* 1998 WL 65995, at *5–6 (S.D.N.Y. Feb.17, 1998) (holding "plaintiff did not take reasonable precautions to protect purported privileged materials by simply providing handwritten notations on 'post it notes' ").

Additionally, there is no evidence in the record that plaintiff's counsel adequately employed a reasonable procedure for separating confidential materials from non-privileged communications. While plaintiff states that Atronic's counsel conducted a thorough review of the documents to be produced pursuant to defendant's document production request, this precaution was flawed because the attorney assigned to review these documents did not know the identity of plaintiff's legal counsel in this matter. *See Whitmeyer III Letter,* dated February 28, 2005 (stating "the review missed the fact that the two e-mails were privileged because the attorney reviewing the documents for privilege was unaware of the identity of Mr. Trachok and inadvertently did not flag them as privileged"). Plaintiff's actions in designating an attorney for document production who was unaware of the identity of plaintiff's legal counsel on this engagement cannot be viewed as having employed a reasonable precaution that would protect the privileged documents. *See Aramony v. United Way of America,* 969 F.Supp. 226, 236–37 (S.D.N.Y.1997) (finding precautions reasonable where senior associates removed privileged materials and placed them in a separate location in a separate file for further examination to determine whether to include in privilege log); *Lloyds Bank PLC v. Republic of Ecuador,* 1997 WL 96591, at *3 (S.D.N.Y. Mar.5, 1997) (finding review adequate where counsel examined documents for privilege, clearly marked such documents and segregated documents identified as privileged so that such materials could be included in privilege log). Thus, the Court finds that plaintiff's "conduct was so careless as to suggest that it was not concerned with the protection of the asserted privilege." *Cassano,* 189 F.R.D. at 85 (internal quotation marks and citation omitted).

The second factor "focuses on the number of privileged documents disclosed in relation to overall size of the document production." *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* 1997 WL 736726, at *4 (S.D.N.Y. Nov.26, 1997); *see Liz Claiborne Inc., v. Mademoiselle Knitwear, Inc.,* 1996 WL 668862, at *5 (S.D.N.Y. Nov.19, 1996) ("where overall scope of production was lim-

ited ... failure to protect privileged documents is more likely to constitute waiver"). While plaintiff claims that the sheer volume of "hundreds" of materials produced in response to SAI's document requests resulted in an excusable inadvertent disclosure of the two privileged e-mails, *see Whitmeyer III Letter,* dated February 28, 2005, as discussed above, the precautions plaintiff employed to prevent inadvertent document production strongly undercuts its claim that disclosure was excusable. *See Lava,* 2005 WL 66892, at *3. Plaintiff's explanation that Atronic's counsel carefully and thoroughly reviewed the two e-mails produced but missed the e-mails' disclosure because the designated attorney was unaware of the identity of counsel on this engagement leads the Court to conclude that regardless of the size of the document production, plaintiff would not have been able to prevent disclosure of any document protected by the attorney-client privilege that was generated from and/or received by Mr. Trachok. This factor, therefore, tips in favor of defendant.

The third factor focuses on the time Atronic took to rectify its error. "Inadvertent disclosure has been held to be remedied when the privilege was asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents." *Rigas,* 281 F.Supp.2d at 741 (internal quotation marks and citation omitted); *see Ngemi v. Board of Educ. of the City School Dist. of the City of New York,* No. 03–Civ. 1457(WHP)(KNF) (S.D.N.Y. Jan. 13, 2005), *reported in Federal Discovery News,* at 7 (March 2005) (holding the "speed with which a party asks for the return of mistakenly disclosed material will be a factor in deciding whether the disclosure amounts to a waiver of the privilege"). "Although inordinate delay in claiming the privilege may result in waiver, the length of delay should be measured from the time the producing party learns of the disclosure, not from the time of the disclosure itself." *United States Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co.,* 2000 WL 744369, at *6 (S.D.N.Y. June 8, 2000).

Here, Atronic received the binder of documents in which the two privileged documents were included at approximately 7 p.m. on Friday, January 7, 2005. *See Whitmeyer III Letter,* dated February 28, 2005. The following week, in preparing Atronic's witnesses for deposition, Atronic discovered that two privileged documents had been inadvertently disclosed. *Id.* On January 13, 2005, prior to the deposition of its first witness, Atronic notified SAI of the privileged nature of the documents and requested their return. *Id.,* Gabel–Auer Dep. at 3–4. Although plaintiff's counsel (i) had in its possession the binder of documents containing the two privileged documents six days prior to discovering that the two confidential communications had been made available to SAI during pretrial discovery in December 2003, and (ii) has proffered no explanation as to why it took Atronic six days to rectify the error, a factor cutting against its favor, *see Cassano,* 189 F.R.D. at 86 (finding the time taken to rectify the error was excessive and that "[t]here was no excuse for waiting 12 days to find out what the document was"), because plaintiff's counsel did attempt to promptly correct the error upon discovery when counsel asserted the privilege and requested the return of the documents prior to the deposition of Sabine Gaebel–Auer on January 13, 2005, this factor weighs slightly in favor of plaintiff. *See Semi–Tech Litigation LLC v. Bankers Trust Co.,* 2002 WL 1751267, at *2 (finding no waiver of privilege where error was discovered and called to opposing counsel's attention within 24 hours); *Gangi,* 1 F.Supp.2d at 266 (finding no delay where government sought relief from court the next day upon discovery that protected information was disclosed); *Lloyds Bank PLC v. Republic of Ecuador,* 1997 WL 96591, at *5 (S.D.N.Y. Mar.5, 1997) (finding no delay in correcting error where attorney acted within 15 to 20 minutes after discovering error by contacting opposing counsel and immediately asserting privilege and requesting return of documents); *Aramony,* 969 F.Supp. at 237 (response within one day of discovery was timely); *Georgia–Pacific Corp. v. GAF Roofing Mfg. Corp.,* 1995 WL 117871, at *2 (S.D.N.Y. Mar.20, 1995) (response within two business days of learning of inadvertent production timely).

That being said, however, the Court finds that on balance, the overarching issues of

fairness tip ultimately in favor of defendant. This final factor focuses on "whether the act of restoring immunity to an inadvertently disclosed document would be unfair." *Prescient*, 1997 WL 736726, at *7 (quoting *Lambert*, 160 F.R.D. at 446). Case law supports a finding of waiver of the attorney-client privilege "where the client places the subject matter of the privileged communication in issue, or where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deprive the adversary of vital information." *Jakobleff v. Cerrato, Sweeney & Cohn*, 468 N.Y.S.2d 895, 897, 97 A.D.2d 834, 835 (2d Dep't 1983) (citing cases); *see Bowne*, 150 F.R.D. at 487–88 ("[E]ven if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication"). Thus, in certain circumstances, "[a]dvancing claims or defenses that make the protected information at issue relevant to the case may justify waiver." *Kuehne*, 36 F.Supp.2d at 134.

In the instant matter, both e-mails contain information that go to the heart of this breach of contract litigation, namely the number of graphic processors Atronic ordered from SAI. The two e-mails contain admissions regarding the number of graphic processors ordered from SAI that differ markedly from the factual position plaintiff has taken in this action, *i.e.*, plaintiff claims principally that Atronic ordered 40,000 processors from SAI (inclusive of the exercise of an option for 20,000 units), and the e-mails reflect a quantity of 20,000. Given the claim and defenses asserted in this action, defendant may be prejudiced by restoring immunity to the inadvertently disclosed e-mails. *See United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991) (observing "the privilege may implicitly be waived when the defendant asserts a claim that in fairness requires examination of protected communications"); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 590 (N.D.N.Y.1989) (discussing waiver resulting from party's proffer of material to establish claim while using privilege to preclude opposing party from challenging that assertion); *see, e.g., Leucadia, Inc. v. Reliance Ins. Co.*, 101 F.R.D. 674, 680 (S.D.N.Y. 1983) (holding "[i]n the context of this case, counsel's communication with plaintiff constituted an important disputed fact essential to plaintiff's proof. It cannot be withheld"). Therefore, based on the totality of the circumstances of this case, considerations of fairness weigh in favor of allowing defendant to use the e-mails in support of its position in this action.

Inasmuch as plaintiff's precautions in preventing the inadvertent disclosure of the two protected documents constitutes inexcusable carelessness, and the protected information at issue is vital to the factual claims and defenses plaintiff has advanced in this action, the Court concludes that the inadvertent production of the two e-mails has resulted in a waiver of the claim of privilege. Accordingly, the Court grants defendant's motion to retain these e-mails to use in this litigation and denies plaintiff's motion for return of the documents.

Dated March 14, 2005.